**AFFIRM; Opinion Filed May 3, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-00228-CV**

**SANDRA LYNN WILHOITE, Appellant**
**V.**
**LINDA DIANE SIMS, Appellee**

**On Appeal from the 95th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 11-03617-D**

## OPINION

Before Justices Bridges, Fillmore, and Myers
Opinion by Justice Myers

Sandra Lynn Wilhoite appeals the judgment declaring a quitclaim deed void and awarding Linda Diane Sims damages and attorney's fees. Wilhoite brings nine issues on appeal contending the trial court erred by (1) failing to apply the three-year statute of limitations; (2) failing to apply the statute of frauds; (3) failing to set aside the jury's finding of statutory fraud because Sims failed to prove a contract; (4) determining title when Sims did not plead or prove a suit for trespass to try title; (5) failing to offset Sims's damages against the rental value of the property; (6) admitting testimony of witnesses not properly identified in response to Wilhoite's requests for production; and (7) failing to charge the jury properly. Wilhoite also contends (8) that Sims's counsel made an improper jury argument that was incurable; and (9) that the trial court made an improper comment on the weight of the evidence. We affirm the trial court's judgment.

## BACKGROUND

Wilhoite and Sims are sisters. In 2004, they each inherited a half interest in their grandfather's house on Londonderry Street in Dallas. On April 10, 2007, when Sims was going through a divorce, Sims signed a quitclaim deed transferring her interest in the property to Wilhoite. Wilhoite did not pay Sims any consideration for the deed.

According to Sims, she prepared and signed the quitclaim deed to help Wilhoite better manage the property and prepare the house for sale. Sims testified they agreed that after the house was sold, they would share the money from the sale equally. Sims testified Wilhoite told her after she signed the quitclaim deed that she still had fifty-percent equity in the house.

In August 2008, a storm blew down a tree that crushed a shed in the backyard and damaged the fence. Sims paid for the cost of repairing the damage from the storm. Sims testified that when insurance proceeds became available for the amount Sims spent to repair the damage, Wilhoite told her she needed the money to pay her utilities, and Sims told Wilhoite to keep the insurance money and they would settle up after the house sold. Sims testified she paid for the repair of the storm damage because she had a half interest in the house.

In 2010, Sims lost her residence to foreclosure. Sims testified that she and Wilhoite agreed that Sims could move into the Londonderry house, make any necessary repairs, and they "would settle up if and when we ever sold the house or when I bought her out of her 50 percent equity." Sims testified she would be reimbursed for fifty percent of the repair expenses. According to Sims, Wilhoite asked Sims in December 2010 to pay rent, and Sims told Wilhoite she would pay rent if the payments went toward her buying out Wilhoite's interest in the property. Sims stated Wilhoite told her to send her a proposal, which Sims did about three weeks later, but Wilhoite never responded. Sims testified she spent $25,378.36 on maintenance and repair of the house after April 2007.

According to Wilhoite, Sims signed the quitclaim deed because Sims was having financial problems in 2007 and was worried that her creditors would take her interest in the house. Wilhoite stated Sims told her she would prefer that Wilhoite have the house than lose her interest to the creditors. Wilhoite testified that when Sims signed the quitclaim deed, Sims gifted her interest in the house to Wilhoite. Wilhoite denied that there was any agreement that Wilhoite would manage the house. Wilhoite also testified that when they received the insurance proceeds for the damage from the storm in 2008, Sims made a gift to her of the insurance funds. Wilhoite stated that she agreed in 2010 that Sims could live in the house if Sims paid rent beginning December 1. She stated she allowed Sims to make repairs if Sims cleared them with her first. The repairs were to be the minimum necessary to sell the house. The only repair Wilhoite said she authorized was painting, and she did not reimburse Sims for the painting because Sims had not paid her any rent. Wilhoite told Sims to send her a proposal for purchasing the house. In January 2011, Wilhoite told Sims to present a proposal by the end of the month or she would evict Sims. Wilhoite testified Sims sent Wilhoite a proposal in February 2011, but Wilhoite rejected it because it was "ridiculously low."

At the end of January or beginning of February 2011, Wilhoite sent Sims notice to vacate the house within thirty days. Wilhoite filed a "Complaint for Eviction" in the justice court on March 4, 2011.[1] Nineteen days later, Sims filed suit in district court seeking a declaratory judgment that the quitclaim deed was voidable, brought a cause of action for cancellation of the quitclaim deed, and sought an injunction to enjoin Wilhoite from evicting her and selling the property. Sims amended her petition in May and June 2011 asserting additional causes of action for unjust enrichment, statutory fraud in a real estate transaction, common-law fraud, breach of

---

[1] In the complaint, Wilhoite's stated reason for the eviction was not nonpayment of rent but that "landlord wishes to terminate the agreement."

fiduciary duty, and trespass to try title. In the eviction suit, the justice court granted judgment in favor of Wilhoite. Sims appealed the eviction, and the trial court enjoined Wilhoite from continuing the eviction process until resolution of this suit.

The trial court submitted only two of Sims's causes of action, statutory fraud in a real estate transaction action and breach of contract,[2] as well as Wilhoite's allegation that Sims gifted the property to her. The jury found (1) that Sims did not gift the property to Wilhoite, (2) that Wilhoite committed statutory fraud in obtaining the quitclaim deed, (2A) that Sims should have discovered the fraud by February 1, 2010, (3) that the parties agreed Wilhoite would reimburse Sims for one-half of her expenses for repair and maintenance of the property, (4) that Wilhoite failed to comply with the agreement, and (5) that Sims's damages resulting from Wilhoite's failure to comply with the agreement were $12,857.42. In the judgment, the trial court declared the quitclaim deed "CANCELLED, RESCINDED, SET ASIDE and VOID" and awarded Sims the damages found by the jury and her attorney's fees.

### THREE-YEAR STATUTE OF LIMITATIONS

In her first issue, Wilhoite contends the trial court erred by failing to apply the three-year statute of limitations. The Texas Civil Practice and Remedies Code provides, "A person must bring suit to recover real property held by another in peaceable and adverse possession under title or color of title not later than three years after the day the cause of action accrues. TEX. CIV. PRAC. & REM. CODE ANN. § 16.024 (West 2002). "If an action for the recovery of real property is barred under [chapter 16], the person who holds the property in peaceable and adverse possession has full title, precluding all claims." *Id.* § 16.030(a). Thus, section 16.024 requires adverse possession under color of title. In this case, Wilhoite had color of title, but we must

---

[2] Sims's live petition does not include an allegation of breach of contract. However, Wilhoite does not complain on appeal that Sims did not plead breach of contract.

consider whether she adversely possessed the property. Wilhoite had the burden of proving adverse possession of the property for three years before Sims brought suit. *See Tex. Sand Co. v. Shield*, 381 S.W.2d 48, 55 (Tex. 1964).

"'Adverse possession' means an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." CIV. PRAC. § 16.021(1). For possession of property to be adverse, the "[p]ossession must be 'actual, visible, continuous, notorious, distinct, hostile, and of such as [sic] character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant.'" *Kazmir v. Benavides*, 288 S.W.3d 557, 561 (Tex. App.—Dallas 2009, no pet.) (quoting *Terrill v. Tuckness*, 985 S.W.2d 97, 107 (Tex. App.—San Antonio 1998, no pet.)). The party claiming adverse possession need only use the land for some purpose to which it is adaptable, and in the same manner an ordinary owner would use the property. *Id.*

In this case, Wilhoite is claiming adverse possession of Sims's half interest in the property. Wilhoite does not explain what evidence shows she possessed the property adversely. It appears from her brief she considers the registration of the quitclaim deed sufficient to constitute adverse possession. However, mere color of title does not constitute adverse possession. *See* CIV. PRAC. § 16.024 (requiring both adverse possession and title or color of title); *Word v. Box*, 3 S.W. 93, 98 (Tex. 1886) ("Mere color of title, unaccompanied by an actual adverse possession of some part of the land to which the color of title relates, is of no efficacy."); *Humble Oil & Ref. Co. v. Parish*, 146 S.W.2d 1045, 1048 (Tex. Civ. App.—Texarkana 1940, writ dism'd judgm't cor.) (quoting *Word*). Nothing in the record shows Wilhoite ever resided on the property during the three years preceding Sims's suit.

We conclude there is no evidence Wilhoite adversely possessed the property openly and continuously for three years before Sims brought suit.  Accordingly, the trial court did not err by failing to apply the three-year statute of limitations.  We overrule Wilhoite's first issue.

**STATUTE OF FRAUDS**

In her second issue, Wilhoite contends the trial court erred by failing to apply the statute of frauds.  Section 26.01 of the Texas Business and Commerce Code provides that "a contract for the sale of real estate" or "an agreement which is not to be performed within one year from the date of making the agreement" is not enforceable unless it "is (1) in writing; and (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him."  TEX. BUS. & COM. CODE ANN. § 26.01(a)(1), (2), (b)(4), (6) (West 2009).  Whether an agreement falls within the statute of frauds is a question of law.  *Bratcher v. Dozier*, 346 S.W.2d 795, 796 (Tex. 1961); *Kalmus v. Oliver*, 390 S.W.3d 586, 589 (Tex. App.—Dallas 2012, no pet.).

Viewing the evidence in the light most favorable to the judgment,[3] the parties had two oral agreements.  The first, entered into in early 2007, was that Sims would quitclaim her title to Wilhoite, Wilhoite would manage the property and try to sell it, and they would share the profit from the sale equally.  The second agreement, entered into in October 2010, was that Sims would move into the property, make repairs, and either sell it or buy out Wilhoite's interest, and Sims would be reimbursed for half the costs of the repairs.

We first consider whether the agreements were "not to be performed within one year."  In deciding whether an agreement is capable of being performed within one year, we compare the date of the agreement to the date when the performance under the agreement is to be completed.  *See* BUS. & COM. § 26.01(b)(6).  If there is a year or more between those two reference points,

---

[3] *See* TEX. R. CIV. P. 279.

–6–

then the contract falls within the statute of limitations and must be in writing to be enforceable. *Kalmus*, 390 S.W.3d at 590; *Young v. Ward*, 917 S.W.2d 506, 508 (Tex. App.—Waco 1996, no pet.). When the date performance will be completed cannot be readily ascertained, the law provides that if performance could conceivably be completed within one year of the agreement's making, a writing is not required to enforce it. *Kalmus*, 390 S.W.3d at 590. "A contract that could *possibly* be performed within a year, however improbable performance within one year may be, does not fall within the statute of frauds." *Beverick v. Koch Powers, Inc.*, 186 S.W.3d 145, 149 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (citing *Hall v. Hall*, 308 S.W.2d 12, 15 (Tex. 1957)).

In this case, the parties' agreements did not set a date for completion of performance, nor does the record show that the parties anticipated any length of time for performance to be completed. On the first agreement, that Wilhoite would manage and try to sell the property and they would share equally in the profits from the sale, the record shows that in the fall of 2007, Wilhoite tried to convince some friends, Angela and William Kneedler, to buy the house. The Kneedlers were in the business of purchasing, remodeling, and selling homes, but they refused to buy the house because they did not do business with friends. Had the Kneedlers accepted and purchased the house, the parties' agreement would have been completed within one year. Likewise, nothing in the record shows the second agreement, that Sims would live in and repair the property and either sell it or purchase Wilhoite's interest, could not have been performed within one year. We conclude the contracts could have been performed within one year.

We next consider whether the agreements were for the sale of real estate. The agreements were for the division of expenses for the repair of the property and profits from the eventual sale of the property. The agreements were not "a contract for the sale of real estate."

–7–

We conclude the parties' oral agreements were not within the statute of frauds. We overrule Wilhoite's second issue.

## STATUTORY FRAUD

In her third issue, Wilhoite contends the trial court erred by not setting aside the jury's finding of statutory fraud because statutory fraud requires a contract, Sims failed to prove the existence of a contract, and no issue was presented to the jury to establish a contract.

For statutory fraud in a real estate transaction, the plaintiff must prove a false representation or promise to a person made for the purpose of inducing the person to enter into a contract. TEX. BUS. & COM. CODE ANN. § 27.01 (West 2009). Wilhoite first asserts Sims presented no evidence of a contract because any contract between the parties was unenforceable because it was not in writing and was subject to the statute of frauds. As discussed above, the parties' agreements were outside the statute of frauds. We conclude Wilhoite's argument lacks merit.

Wilhoite also argues Sims should have submitted a jury question asking whether a contract existed. Rule of Civil Procedure 278 states that the trial court's failure to submit a jury question relied upon by the opposing party is not ground for reversal unless the party objects to the failure to submit the question. TEX. R. CIV. P. 278. Wilhoite did not object to the court's failure to submit a jury question on the existence of a contract. Accordingly, the absence of the jury question is not a ground for reversal. *Id.*

We overrule Wilhoite's third issue.

## DETERMINATION OF TITLE

In her fourth issue, Wilhoite contends the trial court erred by making a determination of title without requiring Sims to plead and prove a trespass-to-try-title cause of action. Section 22.001 of the Texas Property Code provides, "A trespass to try title action is the method of

–8–

determining title to lands, tenements, or other real property." TEX. PROP. CODE ANN. § 22.001(a) (West 2000). In this case, Sims pursued her action for cancellation of the deed under statutory-fraud and declaratory-judgment causes of action. Wilhoite argues the trial court erred by entering judgment cancelling the quitclaim deed as a declaratory judgment.

The Declaratory Judgments Act and the trespass-to-try-title statute differ in their elements and the relief they afford. The Declaratory Judgments Act permits parties to seek a declaration of rights, status, or other legal relationship under certain instruments, including deeds. CIV. PRAC. § 37.004(a) (West 2008). The trespass-to-try-title statute is used to clear problems in chains of title to recover possession of land unlawfully withheld from a rightful owner. *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004). The trespass-to-try-title action has detailed pleadings and proof requirements. *Id.*; *see* TEX. R. CIV. P. 783–809. To prevail in a trespass-to-try-title action, a plaintiff must usually (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned. *Martin*, 133 S.W.3d at 265. The pleading rules are detailed and formal, and they require a plaintiff to prevail on the superiority of his title, not on the weakness of a defendant's title. *Id.*

The issue in this case was whether the quitclaim deed was voidable by being obtained by fraud, not whether Wilhoite's title was superior to Sims's. A suit for cancellation of a deed is an assertion of an equitable right, namely, the right to have a voidable deed cancelled. It is not a claim of right to title and possession of real property. *See Tompkins v. Holman*, 537 S.W.2d 98, 99 (Tex. Civ. App.—Austin 1976, writ ref'd n.r.e.). The assertion of an equitable right, such as cancellation of a deed procured by fraud, is not governed by the trespass-to-try-title statute. *Id.* "Such an assertion is clearly distinguishable from the claim of right to title and possession of real property, which is the *sine qua non* of a suit in trespass to try title." *Id.*

The distinction between a suit for cancellation of a deed and one for trespass to try title was illustrated in *Socony Mobil Oil Corp. v. Belveal*, 430 S.W.2d 529 (Tex. Civ. App.—El Paso 1968, writ ref'd n.r.e.). In that case, the plaintiffs brought suit for cancellation of deeds to the defendants. *Id.* at 532. The trial court's judgment granted cancellation of the deeds but went on to order the defendants to execute warranty deeds to the plaintiffs for the property. *Id.* The appellate court concluded the judgment was in error because "it goes beyond cancellation and, in effect, grants recovery as though in trespass to try title." *Id.* at 532–33.

In this case, the trial court's judgment merely cancels the deed. It does not require Wilhoite to deed her interest to Sims or otherwise make a determination of title to the property. We conclude the trial court did not err by rendering judgment cancelling the deed without Sims having proved a suit for trespass to try title. We overrule Wilhoite's fourth issue.

## DAMAGES

In her fifth issue, Wilhoite asserts various challenges to the trial court's award of damages to Sims.

Wilhoite argues the damages awarded for repair of the property should have been offset by the reasonable rental value of the property while Sims was living there. Wilhoite cites no authority and makes no legal argument explaining her entitlement to an offset. Accordingly, this issue is not properly briefed and is waived. *See* TEX. R. APP. P. 38.1(i); *Rapaglia v. Lupo*, 372 S.W.3d 286, 291 (Tex. App.—Dallas 2012, no pet.).

Wilhoite also argues there is no evidence that Sims's expenditures on the property were reasonable and necessary. A no-evidence issue must be preserved in the trial court by a motion for instructed verdict, an objection to the charge, a motion to disregard a jury finding, a motion for judgment notwithstanding the verdict, or a motion for new trial. *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex. 1985); *Plano Lincoln Mercury, Inc. v. Roberts*, 167

S.W.3d 616, 620–21 (Tex. App.—Dallas 2005, no pet.). Wilhoite did not assert in any of these motions or objections that there was no evidence of the reasonableness and necessity of Sims's expenditures. We conclude Wilhoite did not preserve her no-evidence contention for appellate review.

Wilhoite also argues the trial court erred by awarding Sims her attorney's fees. Texas law does not allow the recovery of attorney's fees unless authorized by statute or contract. *Tony Gullo Motors 1, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006); *In re B.N.L.-B*, 375 S.W.3d 557, 566 (Tex. App.—Dallas 2012, no writ). In this case, three statutes potentially authorized the trial court to award Sims her attorney's fees: section 27.01(e) of the Texas Business and Commerce Code (statutory real estate fraud), section 37.009 of the Texas Civil Practice and Remedies Code (Declaratory Judgments Act), and section 38.001(8) of the Texas Civil Practice and Remedies Code (breach of oral or written contract). Wilhoite asserts the parties had no contract because any contract was barred by the statute of frauds, so Sims could not recover under sections 27.01(e) or 38.001(8). Wilhoite then argues the trial court should not have awarded Sims her attorney's fees under the Declaratory Judgments Act because the award would not be "equitable and just" as required by section 37.009. *See* CIV. PRAC. § 37.009. As discussed above, the parties had oral contracts that were not subject to the statute of frauds. Accordingly, Sims was entitled to recover attorney's fees under section 27.01(e) of the Business and Commerce Code and section 38.001(8) of the Civil Practice and Remedies Code. Because these provisions authorize the trial court's award of attorney's fees, we need not consider Wilhoite's argument that an award of attorney's fees under the Declaratory Judgments Act would not be equitable and just.

Wilhoite also argues Sims's recovery of repair and maintenance expenses should have been limited to the amount those expenditures enhanced the value of the property, citing *Gupton*

–11–

*v. Allen*, No. 2-09-349-CV, 2010 WL 4261477 (Tex. App.—Fort Worth Oct. 28, 2010, no pet.) (mem. op.). *Gupton* involved a trespass-to-try-title action. *Id.* at *2. In a trespass-to-try-title action, a defendant who is not the rightful owner but possessed the property in good faith and made permanent improvements to the property may recover the amount by which the improvements increased the value of the property. PROP. § 22.021 (West 2000); *see Gupton*, 2010 WL 4261477, at *2. This case, however, was not tried as a trespass-to-try-title case, and the trial court made no determination of title. The damages awarded were for Wilhoite's breach of the parties' agreement to divide the costs for maintenance and repair of the property. Wilhoite's argument lacks merit.

We overrule Wilhoite's fifth issue.

## REQUESTS FOR DISCLOSURE

In her sixth issue, Wilhoite contends the trial court erred by admitting testimony from witnesses called by Sims when Sims's responses to Wilhoite's requests for disclosure did not adequately disclose the witnesses' connection to the case. Rule 194.2(e) permits a party to request that the opposing party disclose "the name, address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case." TEX. R. CIV. P. 194.2(e). Wilhoite objected to two witnesses as not properly identified in Sims's responses, and the trial court overruled the objections.

Neither Wilhoite's request for disclosure nor Sims's response is in the record. Wilhoite sets forth in her appellant's brief what she asserts was Sims's response, but "we do not consider factual assertions that appear solely in briefs and are not supported by the record." *Unifund CCR Partners v. Weaver*, 262 S.W.3d 796, 797 (Tex. 2008) (per curiam) (quoting *Marshall v. Hous. Auth. of San Antonio*, 198 S.W.3d 782, 789 (Tex. 2006)); *see* TEX. R. APP. P. 38.1(g), (i) (requiring the statement of facts and argument be supported by citations to the record). Wilhoite

–12–

attached to her reply brief a purported copy of Sims's response to the request for disclosure. However, we cannot consider attachments to briefs that are not part of the appellate record. *Langley v. Comm'n for Lawyer Discipline*, 191 S.W.3d 913, 915 (Tex. App.—Dallas 2006, no pet.). Because Wilhoite's argument is not supported by the record, we conclude it lacks merit.

We overrule Wilhoite's sixth issue.

## JURY CHARGE

In her seventh issue, Wilhoite contends the trial court erred in the jury charge. "Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections" to the charge. TEX. R. CIV. P. 274; *In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003).

In her brief, Wilhoite complains that jury question 1, inquiring whether Sims gave the property to Wilhoite as a gift, placed the burden of proof on the wrong party and was confusing. She asserts that questions concerning whether there were two contracts should have come before the fraud and damages questions. She also asserts that questions 2 and 2A, inquiring whether Wilhoite committed fraud and the date by which Sims should have discovered the fraud, should have been conditioned upon a finding that there was an underlying contract. She also argues that question 2A should not have been submitted. She argues that question 3, which asked whether the parties agreed that Wilhoite would reimburse Sims "for one-half of the expenses incurred for the repairs and maintenance on the Property," improperly presupposed that only Sims had any expenses. Wilhoite asserts question 5, the damages question, is defective because it instructs the jury to "[c]onsider the following element(s) of damages, if any, and none other," and then fails to list any elements.[4] However, Wilhoite did not make any of these complaints in her objections to

---

[4] Wilhoite is factually incorrect in this assertion. Question 5 instructs the jury to consider "[t]he reasonable and necessary cost to maintain and repair the Property."

the charge. Accordingly, they are waived. *See* TEX. R. CIV. P. 274; *In re B.L.D.*, 113 S.W.3d at 349.

We overrule Wilhoite's seventh issue.

## JURY ARGUMENT

In her eighth issue, Wilhoite contends a new trial should be ordered because of Sims's improper jury argument. During Sims's closing argument, her attorney stated,

> [Sims's Counsel:] You know, we're very, very lucky that unfortunately—we're very lucky that Ms. Sims has a great son over there protecting us in Afghanistan and couldn't be here.
>
> [Wilhoite's Counsel:] Objection, Your Honor, completely outside the testimony—
>
> [Sims's Counsel:] He couldn't come testify.
>
> [Wilhoite's Counsel:] —and evidence.
>
> The Court: Sustained.

Wilhoite did not request an instruction to disregard or move for a mistrial. In her motion for new trial, Wilhoite asserted the argument was incurable.

To prevail on a claim that an improper jury argument was incurable, the appellant must generally show that the argument, by its nature, degree, and extent, constituted such error that an instruction from the court or retraction of the argument by counsel could not have removed its effects. *Living Ctrs. of Tex., Inc. v. Penalver*, 256 S.W.3d 678, 680–81 (Tex. 2008). The previously recognized types of incurable argument have included: (1) appeals to racial prejudice; (2) the use of inflammatory epithets such as "liar," "fraud," "faker," "cheat," and "imposter"; and (3) unsupported charges of perjury and witness tampering. *Id.* at 681; *Std. Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 840 (Tex. 1979); *Cottman Transmission Sys., L.L.C. v. FVLR Enters., L.L.C.*, 295 S.W.3d 372, 380 (Tex. App.—Dallas 2009, pet. denied). The test is the amount of harm caused by the argument:

whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict.

*Living Ctrs.*, 256 S.W.3d at 681 (quoting *Tex. Emp'rs' Ins. Ass'n v. Haywood*, 266 S.W.2d 856, 858 (Tex. 1954)).

The argument in this case, that Sims's son could not be present at the trial because he was "protecting us in Afghanistan" did not involve any of the previously recognized forms of incurable argument. This argument was not so inflammatory or prejudicial that a withdrawal of the argument or an instruction of the court to disregard the argument could not have cured any harm from it.

We overrule Wilhoite's eighth issue.

## TRIAL COURT'S COMMENT ON THE EVIDENCE

In her ninth issue, Wilhoite contends the trial court erred by improperly commenting on the weight of the evidence. During Sims's testimony, Wilhoite's counsel cross-examined Sims about her expenses for repair and maintenance of the property and whether she had receipts for her expenditures:

Q. [Wilhoite's Counsel] Do you have a receipt?

A. I do somewhere, yes, but this was for three years ago.

Q. Have you brought it here today?

A. Not for that one, no.

Q. So there's no—no receipt—

A. No.

Q. —is that correct?

A. I don't have it with me, no.

Q. Well, we're in trial today. Are you going to have it tomorrow?

A. I can get it by tomorrow.

–15–

[Sims's Counsel:] Excuse me, Your Honor. I'm going to object to this line of questioning. If he wanted to subpoena the receipts, he could have done so. This has been on record for this year, so I object to this line of questioning about what's in our file or what's not in our file.

The Court: Sustained.

Q. [By Wilhoite's Counsel] So you didn't bring the receipt; is that correct?

[Sims's Counsel:] Objection, Your Honor, same objection. The witness has not been subpoenaed duces tecum to bring it.

The Court: Sustained.

. . . .

Q. [By Wilhoite's Counsel] Did you bring the receipt on any of these items?

[Sims's Counsel:] Same objection.

[Wilhoite's Counsel:] Your Honor—

The Court: Have they been subpoenaed, counsel?

[Wilhoite's Counsel:] No, Your Honor.

The Court: Sustained. Ladies and gentlemen of the jury, no witness is required to show up with documents, unless I've ordered them to do so, unless there's been a subpoena issued for them.

Wilhoite did not object to the trial court's statement, nor did she raise it in her motion for judgment notwithstanding the verdict or motion for new trial. To preserve error from a trial court's improper conduct or comment, a party must object to the conduct or comment when it occurs unless the conduct or comment could not be cured by a proper instruction. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *State v. Wilemon*, 393 S.W.2d 816, 818 (Tex. 1965). In her briefing, Wilhoite explains that her cross-examination was both proper and crucial to her attack on Sims's expenses. However, Wilhoite does not explain why the trial court's comment could not have been cured. We conclude Wilhoite failed to preserve this issue for appellate review. *See Dow Chem. Co.*, 46 S.W.3d at 241; *Wilemon*, 393 S.W.2d at 818.

We overrule Wilhoite's ninth issue.

**CONCLUSION**

We affirm the trial court's judgment.

/Lana Myers/
_____
LANA MYERS
JUSTICE

120228F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

Sandra Lynn Wilhoite, Appellant

No. 05-12-00228-CV          V.

Linda Diane Sims, Appellee

On Appeal from the 95th Judicial District Court, Dallas County, Texas

Trial Court Cause No. 11-03617-D.

Opinion delivered by Justice Myers.

Justices Bridges and Fillmore participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Linda Diane Sims recover her costs of this appeal from appellant Sandra Lynn Wilhoite.

Judgment entered this 3rd day of May, 2013.

/Lana Myers/

LANA MYERS
JUSTICE