# IN THE SUPREME COURT OF TEXAS

══════════
No. 14-0530
══════════

BNSF Railway Company, Petitioner,

v.

James E. Phillips, Respondent

══════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Second District of Texas
══════════════════════════════════════════════

**PER CURIAM**

James Phillips sued his employer, BNSF Railway Company, under the Federal Employers' Liability Act (FELA) and the Locomotive Inspection Act (LIA) to recover damages for a latent occupational injury. After a jury trial, Phillips secured a judgment awarding him damages and costs, and a divided court of appeals affirmed. 434 S.W.3d 675. BNSF filed a petition for review in this Court, arguing, among other things, that Phillips did not timely file his lawsuit. Because we agree that no evidence supports the jury's finding that Phillips timely filed his lawsuit, we grant BNSF's petition for review and, without hearing oral argument, reverse the judgment of the court of appeals and render judgment that Phillips take nothing.

Phillips began working for BNSF's predecessor-in-interest in 1974 as a switchman in the Clovis, New Mexico railway yard. Four or five years into his career at BNSF, Phillips began to ride

on locomotives as a brakeman. Phillips received promotions that made him a conductor in 1984 and an engineer in 1994. While riding on the locomotives, he experienced "rough riding locomotives" with poorly maintained seats, which he alleged caused him to suffer long-term vibratory exposure resulting in an occupational injury. Phillips sued BNSF under the FELA and the LIA. After a jury trial, the trial court rendered judgment awarding Phillips $1.9 million in costs and damages. BNSF appealed, arguing, among other things, that no evidence supported the jury's finding that Phillips's lawsuit was timely filed. The court of appeals affirmed, holding that because there was conflicting evidence in the record concerning when the injury occurred, the jury was entitled to weigh that evidence and reach its finding that Phillips's lawsuit was timely. *See id.* at 682. BNSF petitioned this Court for review, again arguing that there was no evidence to support the jury's finding that Phillips's lawsuit was timely filed.

Although FELA claims are creatures of federal statute, federal and state courts share concurrent jurisdiction over them. 45 U.S.C. § 56. Accordingly, we apply federal substantive law and our own procedural law to this dispute. *See In re GlobalSantaFe Corp.*, 275 S.W.3d 477, 485 (Tex. 2008).

The statute of limitations for an FELA claim is three years. 45 U.S.C. § 56. A plaintiff may not bring an independent cause of action for an alleged violation of the LIA, but rather must bring the claim as part of an FELA action. *See Urie v. Thompson*, 337 U.S. 163, 188 (1949). We therefore apply the FELA limitations period to both of Phillips's claims. Unlike most statutes of limitations, which generally operate as an affirmative defense, an FELA plaintiff bears the burden of proving that the lawsuit was timely filed. *See Bealer v. Mo. Pac. R.R. Co.*, 951 F.2d 38, 39 (5th Cir. 1991) (per

2

curiam). Federal courts apply the discovery rule when the plaintiff has suffered a purely latent injury. *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 229 (5th Cir. 1984). According to the United States Supreme Court, a claim accrues under the discovery rule "when the accumulated effects of the deleterious [working conditions] manifest themselves." *Urie*, 337 U.S. at 170 (citation omitted). The United States Court of Appeals for the Fifth Circuit further refined the rule by stating that "a claim accrues when a plaintiff knows or should know that his injury is work related, that is, when a plaintiff is aware of the critical facts concerning his injury and its causation." *Bealer*, 951 F.2d at 39. While the ultimate determination of when a plaintiff's cause of action accrues is generally one of fact, the question becomes one of law when an overwhelming array of evidence indicates that the case is time-barred. *Crisman v. Odeco, Inc.*, 932 F.2d 413, 417 n.4 (5th Cir. 1991).

BNSF argues that no evidence supports the jury's finding on timeliness. No evidence exists when:

> (a) [there is] a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; [or] (d) the evidence establishes conclusively the opposite of the vital fact.

*City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005) (citation omitted). When determining whether any evidence supports a judgment, we are "limited to reviewing only the evidence tending to support the jury's verdict and must disregard all evidence to the contrary." *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex. 1990). We view the evidence and possible inferences in the light most favorable to the verdict. *Id.* at 228. Reviewing courts, however, may not ignore contrary evidence that is conclusive. *City of Keller*, 168 S.W.3d at 816–17.

3

In *Bealer*, an instructive case, the Fifth Circuit held that an FELA plaintiff's lawsuit was time-barred as a matter of law. *Bealer*, 951 F.2d at 39. There, the plaintiff sued the Missouri Pacific Railroad Company in October 1989, "claiming that his employment as a switchman caused a hearing disorder which has left him permanently disabled." *Id.* The district court granted the railroad's motion for summary judgment on the timeliness issue, concluding that the plaintiff "knew or should have known that his injury was work related well before 1986." *Id.* Despite contrary evidence regarding the plaintiff's subjective connection of his hearing problems to his employment, the Fifth Circuit affirmed the summary judgment based on the following facts:

> In 1979 Appellant told a doctor that he associated hearing loss with a train whistle. At that date, the doctor advised him to wear ear plugs on the job. Appellant first complained of dizziness in 1984, and in 1985 he was terminated from employment because of his ear problems. At his deposition and in response to interrogatories, Appellant stated that he was frequently bothered by loud noises on the job, that whistle blasts caused ringing in his ears, and that he often complained to engineers and co-workers about noise levels on the job. He also testified that he was unaware of any exposure to high noise levels outside of the work place that might have caused problems with his ears. The doctor's letter that Appellant received in 1986 indicates that Appellant's symptoms had been the same for "quite some time." Finally, Appellant himself testified that there was no substantial change in his ear and hearing problems in 1984, 1985, or 1986.

*Id.* at 40.

The facts in this case are similar to those in *Bealer*. Phillips filed his lawsuit on April 13, 2007, and therefore bore the burden of proving that his claim accrued no earlier than April 13, 2004. *See* 45 U.S.C. § 56; *Bealer*, 951 F.2d at 39. The evidence conclusively establishes that Phillips failed to meet that burden. Phillips testified that he frequently worked on "rough riding locomotives" with poorly maintained seats over his thirty-one-year tenure with BNSF, twenty-six of which were

spent riding locomotives. Phillips would report these rough-riding conditions or poorly maintained seats to railroad management via radio. Although Phillips expressed a reluctance to using the word "complain" to describe his own reporting, he testified that he "heard his coworkers complaining [of the same conditions] on the radio all the time." In 1998, Phillips sought chiropractic treatment for tenderness up and down his spine. In preparation for that treatment, Phillips submitted an intake form indicating that the soreness in his spine was aggravated by "rough riding railroad engines," although he did not believe that his injury arose out of his employment. Phillips also indicated on the intake form that he had suffered from lower back pain, neck pain or stiffness, cramps or backache, ear noises, and tingling or numbness in his hands, legs, and feet. Because Phillips's spine would not respond to adjustments, Phillips's chiropractor, Dr. Washburn, ordered an MRI in 2003. The reviewing radiologist diagnosed Phillips with minor bulging in his discs, intravertebral hemangiomas, and most importantly, a spinal disorder, spondylolysis. These conditions and injuries, which were diagnosed in 2003, are the same types of injuries on which Phillips bases his lawsuit against BNSF. In 2005, a neurologist confirmed the radiologist's diagnosis and informed Phillips that, based on his MRI, he should have come into the doctor's office in a wheelchair and had "climbed up the last ladder of a locomotive as of that day." Despite the neurologist's grave outlook on Phillips's spinal health, Phillips testified that there was no dramatic change in his spinal health leading up to 2005, but rather that his 2005 diagnosis was when he finally was "properly diagnosed by a neurologist."

The evidence in this case demonstrates that, as early as his chiropractor visit in 1998, Phillips's injuries had begun to manifest themselves. *See Urie*, 337 U.S. at 170. By 2003, Phillips

received a concrete diagnosis that he had spondylolysis and back injuries, and after the MRI, Phillips continued to see Dr. Washburn for several years to treat his symptoms. Although Phillips argues that he was not aware of his injuries or their cause until 2005, he never argues that he was not aware of the 2003 diagnosis and even concedes that he was diagnosed with spondylolysis in 2003 in his brief on the merits. This diagnosis, coupled with his complaints to BNSF and coworkers about the rough-riding conditions and poorly maintained seats, and his 1998 statements to his chiropractor that those work conditions aggravated his symptoms, establish that Phillips was aware of the critical facts surrounding his injury and its causation and should have known that his injury was work related. *See Bealer*, 951 F.2d at 39. This evidence conclusively establishes that Phillips's claim accrued no later than his 2003 diagnosis. Therefore, his 2007 lawsuit is untimely.

Phillips argues against this result by citing evidence he says supports the jury's verdict. First, Phillips points to his 2004 visit to and diagnosis from the Kidney & Blood Pressure Clinic of Lubbock. The "Outpatient Followup" to that visit noted that Phillips's musculoskeleton contained "no gross abnormalities on inspection, no joint swelling/effusion" and assessed that Phillips suffered from hypertension and diabetes, among other ailments, but did not mention spondylolysis or bulging discs. Second, Phillips points to the patient intake form he submitted to his chiropractor in 1998, in which he indicated he did not believe that his injury arose out of his employment. Third, Phillips points to his testimony that the first time he understood his spinal condition was caused by his work was "prior to 2005, possibly, somewhere in there." Finally, Phillips notes that he never filed a written complaint with BNSF regarding rough-riding conditions or poorly maintained seats.

6

We do not believe the evidence Phillips cites is probative of the ultimate issue of whether he should have known his injury was work related. As Phillips correctly notes, the reviewing doctor from the Kidney & Blood Pressure Clinic of Lubbock "made no diagnosis related to any spinal injury and made no note of any pain or injury related to Phillips' spine." Phillips argues that this lack of a diagnosis is probative of a clean bill of spinal health. However, the "Outpatient Followup" also notes that the examination was only a follow-up for Phillips's suspected hypertension. Therefore, the absence of a spinal diagnosis is expected and is not probative of whether Phillips should have known that his spinal injury was work related. Additionally, while Phillips's notation on the patient intake form in 1998 that he did not believe his injury arose out of his employment may well be probative of his subjective connection of his injury to his employment, the relevant inquiry is whether a reasonable person should have known that his spinal injury was work related, not whether Phillips subjectively knew his injury was work related. *See Bealer*, 951 F.2d at 39.

Phillips's testimony that the first time he understood that his work caused his spinal condition was "prior to 2005, possibly, somewhere in there" is also not probative because of its circumstantially equal character. *See Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996) (explaining that circumstantially equal evidence possesses no probative value and is not evidence). Phillips counters by arguing that "the time period described by Phillips could not have extended to the time prior to April 13, 2004 because, as of June 2004 he was not reporting any spinal or neck symptoms whatsoever." However, the record contains numerous references to Phillips's experiencing spinal symptoms. For instance, as discussed above, Phillips reported "chronic back spasms" in June 2004; was diagnosed with minor bulging in his discs, intravertebral hemangiomas,

7

and spondylolysis in 2003; and testified that there was no dramatic change in his spinal health leading up to 2005. In contrast, the only reference in the record to Phillips's experiencing no spinal symptoms is the unreasonable inference that the Kidney & Blood Pressure Clinic of Lubbock's failure to diagnose a spinal injury equates to a clean bill of spinal health. As a result, Phillips's argument is not supported by the record, and his testimony is not probative of whether he should have known that his spinal injury was work related.

Finally, for purposes of accrual, we do not believe that Phillips's having reported over the radio about rough-riding conditions or poorly maintained seats, as opposed to submitting a written report, is a material distinction. The inquiry is whether Phillips should have known his injury was work related, not whether Phillips complied with internal procedures. This evidence is not probative of whether Phillips should have known that his spinal injury was work related. To the extent that these four pieces of evidence may be considered, they are contrary to the overwhelming array of evidence indicating that the claim is time-barred. *See Crisman*, 932 F.2d at 417 n.4 (discussing the effect of an overwhelming array of contrary evidence); *see also City of Keller*, 168 S.W.3d at 816–17 (discussing the effect of disputed, yet conclusive evidence).

Phillips makes one more argument in support of his position. He quotes our opinion in *Childs v. Haussecker* for the proposition that "a diligent plaintiff's mere suspicion or subjective belief that a causal connection exists between his exposure and his symptoms is, standing alone, insufficient to establish accrual as a matter of law." 974 S.W.2d 31, 43 (Tex. 1998). Phillips's reliance on *Childs* is misplaced because he did not exercise diligence upon first being diagnosed with his spinal injuries in 2003. Phillips waited two years before he obtained a second opinion or further

investigated the cause of his injuries despite harboring serious suspicions about the cause of his injury. This is not diligence. *See id.* at 47 (concluding that a plaintiff who began exhibiting symptoms of silicosis and who knew that other members of his profession had been diagnosed with silicosis that was caused by inhaling occupational dust was not diligent when he "[sat] idly for almost a year" before seeking medical treatment). The evidence in this case, which includes a concrete diagnosis of Phillips's back injuries, is not only sufficient to establish accrual, but is also conclusive. *See Bealer*, 951 F.2d at 40 (holding that accrual was established as a matter of law based on similar facts).

Accordingly, we grant the petition for review, and without hearing oral argument, TEX. R. APP. P. 59.1, we reverse the court of appeals' judgment and render judgment that Phillips take nothing.


OPINION DELIVERED: December 4, 2015