**Reverse and Rendered and Opinion Filed August 27, 2024**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-23-00824-CV

**POWERHOUSE MINISTRIES CHURCH OF GOD IN CHRIST, Appellant**
**V.**
**FRIENDLY CHURCH OF GOD IN CHRIST, Appellee**

**On Appeal from the 397th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. CV-18-1901**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Carlyle
Opinion by Justice Pedersen, III

This appeal addresses dueling claims of trespass to try title to church property

located at 705 through 711 East Lamar Street, in Sherman, Texas (the Property).

Appellant Powerhouse Ministries Church of God in Christ (Powerhouse) appeals the

trial court's June 9, 2023 Judgment awarding the Property to appellee Friendly

Church of God in Christ (Friendly).[1] In four appellate issues, Powerhouse challenges

the trial court's rulings concerning application of the Ecclesiastical Abstention

---

[1] We use the terms Powerhouse and Friendly throughout this opinion solely to identify the parties to this appeal, named as they pleaded their claims in the trial court. When we address below the identity of the various entities who have owned or claimed the Property, we will employ complete names of those entities.

Doctrine, Friendly's standing to pursue this action, the actual identities of the parties and entities involved in the issue of title, and the sufficiency of the evidence to support the court's awarding the Property to Friendly. For the reasons discussed below, we reverse the trial court's judgment and render judgment that Friendly take nothing on its trespass to try tile claim and that Powerhouse is entitled to title and possession of the Property.

**Background**

Clayton Davis was appointed interim pastor of the Friendly Church of God in Christ in Sherman Texas on May 15, 2015. Davis testified that he met with the church's trustees that same month to discuss certain changes he believed were necessary in church operations. The church trustees at that time were Susie Viars, Leonard Polk, and Carolyn Spencer-Harris. Among the changes that took place were the addition of Pastor Davis's name to the church bank account and the filing by Kassandra Davis (Pastor Davis's wife) of a Certificate of Formation Nonprofit Corporation, pursuant to which the church became a nonprofit corporation for the purpose of "Religious-Church Services." According to Pastor Davis's testimony, the church had not been registered with either state or federal government when he became pastor and the filing was necessary for the church to obtain the tax benefits to which it was entitled. Pastor Davis's formal appointment as pastor was confirmed on March 18, 2016, in a letter from Bishop Nelson J. Gatlin, prelate of Texas

Northeast Third Jurisdiction of the Church of God in Christ, and Pastor Davis was installed later that year.

Relationships within the church had become strained by the latter part of 2017. And on August 31 of that year, Bishop Gatlin sent a letter addressed "to whom it may concern," asserting that "Clayton E. Davis and Kasandra S. Davis have been indefinitely suspended from all power, authority, decision making, and leadership" of the church.[2] And in September, a group of members announced that they were taking a temporary leave of absence from the church. Polk testified that they took this leave "because of the environment of the church." Bishop Gatlin testified that when this group of members left the church, "they left it under a cloud of disagreement, of—of what was going to happen from that point on."

One thing that happened in June of the following year was that the members who remained in the church voted to rename the church the Powerhouse Ministries Church of God in Christ. Mrs. Davis testified that members wished to rename the church "[b]ecause the church had been broken into several times, negative information had been placed on Facebook regarding the ministry, regarding Pastor Davis, regarding [herself]." Both the national church and the state were notified of the name change.

---

[2] Bishop Gatlin testified that he was subsequently informed that he must apologize to Pastor Davis for this letter and for attempting to suspend the pastor. He did so.

On August 20, 2018, the members who had been absent on leave since the prior September sent a letter (on stationary headed "Friendly Church") to the Texas Northeast Third Ecclesiastical Jurisdiction of the Church of God in Christ, the National Church of God in Christ, Pastor and Mrs. Davis, and the Members of Friendly Church, stating the following:

> We, the duly elected trustees of the Friendly Church of God in Christ (and members listed below), hereby rescind our letters of temporary absence, effective immediately.
>
> We hereby withdraw the Friendly Church of Christ from [the] Texas Northeast Third Ecclesiastical Jurisdiction of [the] Church of God and the National Church of God in Christ, LLC, effective immediately. We hereby declare that the Friendly Church be an Independent Religious Organization.

The letter went on to declare that the Davises were terminated from their role as pastor and were instructed not to enter on the church property. A week later, the church's locks were destroyed and replaced at the direction of Bishop Gatlin.[3]

Ten days after this declaration, Bishop Gatlin sent a letter—as part of an apology to Pastor Davis that was required by the national church—explaining that the Powerhouse Church of God in Christ would thereafter fall within the jurisdiction of Fort Worth's Ecclesiastical Jurisdiction. Bishop Gatlin wished Pastor Davis and his church well, but asked Davis to "release" the Sherman church property to the members who left his congregation.

---

[3] This was the second time the bishop had overseen the destruction and change of locks on the Property; he did so initially in December 2017.

When Pastor Davis did not "release" the Property, Bishop Gatlin filed an eviction action against Powerhouse. Powerhouse then filed this suit, seeking injunctive relief against Gatlin and a declaration that Powerhouse was entitled to title and possession of the Property. Following entry of a temporary restraining order and a temporary injunction in Powerhouse's favor, Friendly intervened in the lawsuit, claiming ownership of the Property. Trial was to the court. Testimony and exhibits are discussed further where relevant to our analysis below. In the end, the trial court signed its judgment awarding the Property to Friendly.

This appeal followed.

**Discussion**

We address Powerhouse's four issues in turn.

*The Ecclesiatical Abstention Doctrine*

In its first issue, Powerhouse argues that the matters at issue in this appeal are properly matters for the Church of God in Christ to determine, so the Ecclesiastical Abstention Doctrine barred the trial court from making its rulings concerning ownership of the Property. The Ecclesiastical Abstention Doctrine bars civil courts from "delving into matters of 'theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them.'" *In re Diocese of Lubbock*, 624 S.W.3d 506, 508–09 (Tex. 2021) (quoting *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696 (1976)). Churches have a fundamental right under the First Amendment to

decide matters of church governance, faith, and doctrine for themselves, free from interference from the state judiciary. *Id.* at 513.

However, the fact that parties to a lawsuit are churches does not foreclose all civil jurisdiction. Indeed, Texas courts are bound to exercise the jurisdiction vested in them by the Texas Constitution; they cannot delegate their judicial prerogative where jurisdiction exists. *Masterson v. Diocese of Nw. Tex.*, 422 S.W.3d 594, 606 (Tex. 2013). "Because churches, their congregations, and their hierarchies exist and function within the civil community, they are amenable to rules governing civil, contract, and property rights in appropriate circumstances." *In re Episcopal Sch. of Dallas, Inc.*, 556 S.W.3d 347, 353 (Tex. App.—Dallas 2017, no pet.). We must analyze the nature of the case to determine whether it is an ecclesiastical dispute or simply a civil dispute in which church officials or members happen to be involved. *Id.* We review the trial court's ruling on this issue de novo. *Diocese of Lubbock*, 624 S.W.3d at 512.

Here, the dispute is between two churches, one formed by a withdrawing faction of the original church, that each claim ownership of real property. The National Church of God in Christ makes no claim to the Property in this suit and has not become involved in the litigation in any fashion. We apply neutral principles of law to non-ecclesiastical issues involving religious entities just as we apply those principles to other entities. *Masterson*, 422 S.W.3d at 606. Title to the land making up the Property can be determined using neutral principles of law. *See id.* (courts are

–6–

to apply neutral principles of law to issues such as land title even when religious entities are involved). We conclude this lawsuit is a civil dispute that is well within the jurisdiction of Texas courts; the trial court correctly refused to apply the Ecclesiastical Abstention Doctrine.

We overrule Powerhouse's first issue.

*Standing*

In its second issue, Powerhouse contends that Friendly lacked standing to file an intervention in this case, so the case should have been dismissed for lack of jurisdiction below. Powerhouse argues that:

> The Appellees have no standing as a Church of God in Christ because the members and purported Trustees, including purported Trustee Leonard Polk left the Church of God in Christ, asserted they were back after a leave of absence, disavowed the Church of God in Christ, and claimed themselves to be "Friendly Church", not "Friendly Church of God in Christ". Appellees cannot claim to disavow the National Church of God in Christ, then claim to be a Church of God in Christ.

As a threshold matter, we address whether Powerhouse has actually raised an issue of jurisdictional standing in this complaint. We review questions of standing de novo. *Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020).

Our supreme court has acknowledged the confusion that often exists in a party's complaint about standing. *See Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 773 (Tex. 2020) ("Like jurisdiction, standing 'is a word of many, too many, meanings.'" (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998))). It is true that a lack of standing—in the true constitutional sense of that

term—would deprive the trial court of subject-matter jurisdiction. *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008). But a plaintiff does not lack standing in that constitutional sense merely because it cannot prevail on the merits of its claim. *Pike*, 610 S.W.3d at 773. Instead, it lacks standing if its "claim of injury is too slight for a court to afford redress." *Id.*

We understand Powerhouse's complaint in this issue to be that Friendly has no proper claim to the Property based upon Friendly's history with Powerhouse and the National Church of God in Christ. Powerhouse argues that Friendly's members left both Powerhouse and the national church and, therefore, cannot prevail on their claim to the Property. But that is not a jurisdictional argument. *See id.*[4] Friendly argues that its members are the true owners of the Property and that Powerhouse occupied the Property illegally. That is a complaint of significant injury which, if successful, could be redressed by a Texas court. *See id.* Thus, Friendly has standing to make its claim to the Property.

We overrule Powerhouse's second issue.

*Identities of the Church Entities*

In its third issue, Powerhouse asks whether "Powerhouse Ministries Church of God in Christ," formerly named "Friendly Church of God in Christ, Inc.," is a

---

[4] Nor is it a "capacity" argument, which is often confused with standing. Powerhouse does not argue that the Friendly entity somehow should have intervened, or could only recover, in a different status, i.e., through its members, or its trustees.

separate entity from "Friendly Church of God in Christ." The notion of "separate" churches or entities, and the actual identity of each, is relevant in at least two area of our analysis: (1) when addressing the withdrawal of one body of members from Powerhouse Ministries Church of God in Christ to organize its own separate church entity, and (2) when identifying grantees in the deeds establishing ownership of the Property. It is critical, therefore, to understand the context of any determination of "separate" churches.

> The trial court's judgment states the following:

> On May 16, 2023, the Court heard this cause, in which Powerhouse Ministries Church Of God In Christ, Inc. is the plaintiff and Friendly Church of God in Christ, an unincorporated nonprofit association is the intervenor. . . . The Court finds that Powerhouse Ministries Church of God in Christ, Inc. and Friendly Church of God in Christ, an unincorporated nonprofit association are two separate and distinct entities.

We agree with the trial court's finding in one context; we disagree in the other.

1. <u>The Original Friendly Church and the Separated Friendly Church</u>.

In the trial court's context quoted above, we agree with the finding. The court has essentially defined the parties to the suit below—and to this appeal—and concluded that they are separate and distinct entities. We agree with this finding based on the following undisputed facts:

- Initially, members of the two parties were members of the longstanding church entity known as Friendly Church of God in Christ. That entity was for many years an unincorporated nonprofit association. We will refer to that entity as the Original Friendly Church.

–9–

- In July 2015, the Original Friendly Church was registered with the State of Texas as a nonprofit religious corporation.

- In September 2017, a number of the Original Friendly Church's members announced they were taking a temporary leave of absence from that entity.

- In June 2018, members of the Original Friendly Church who remained with Pastor Davis voted to change the entity's name to the Powerhouse Church of God in Christ.

- By letter dated August 20, 2018, the members who had taken temporary leave of the church rescinded their leave of absence and declared, "effective immediately," that they were withdrawing their church entity from both the Third Ecclesiastical Jurisdiction and the National Church of God in Christ, LLC. They declared that the Friendly Church was to be an Independent Religious Organization.

This new and independent church entity has, at various times, been called the New Friendly Church, the Friendly Church, or the Friendly Church of God in Christ, an unincorporated nonprofit association.[5] We will refer to this entity as the Separated Friendly Church. We agree with the trial court's finding that the evidence at trial makes clear that the Original Friendly Church and the Separated Friendly Church are separate and distinct entities and that those entities are the parties to this lawsuit and appeal.

---

[5] Underscoring this break from the Original Friendly Church, Bishop Gatlin testified that "[t]he new Friendly Church has just been organized in the last few years."

2.  The Original Friendly Church and Powerhouse Church of God in Christ

In the context of tracing deeds to the Property and identifying the grantees therein, a different, but related, understanding of the parties becomes clear. Here, the undisputed evidence shows:

- Five deeds, properly recorded in the property records of Grayson County and admitted as evidence at trial indicate the following lots were granted to the following grantees:

  - in September 1970, lots 7 and 8 granted to named trustees[6] of the Friendly Church of God in Christ, an unincorporated religious association of the City of Sherman, Grayson County, Texas.

  - in March 1990, lots 4, 5, and 6 granted to the Friendly Church of God in Christ;

  - in August 1998, lots 11 and 12 granted to the Friendly Church of God in Christ;

  - In January 2001, lots 9 and 10 granted to the Friendly Church of God in Christ; and

  - in October 2016, lots 1, 2, and 3 granted to the Friendly Church of God in Christ.

- Between September 1970 and October 2016, the Property was obtained—in increments of two to three lots at a time—by the entity we have called the Original Friendly Church. The early corporate status of the Original Friendly Church (i.e., "an unincorporated religious association") is only mentioned in the first deed, but the first four grants were made to the Original Friendly Church during the time that it was an unincorporated entity. The final deed was granted to the Original Friendly Church after it was incorporated.

---

[6] The trustees named did not include any of those identified at trial as being trustees during Pastor Davis's tenure. The 1970 named trustees were O. L. Davison, Raymond Viars, Jasper Cooper, W, B. Bryant, L. C. Whitfield, and William Niblett.

- After the fifth and final deed, the Original Friendly Church changed its name to Powerhouse Church of God in Christ, with proper notice to the State of Texas and the National Church of God in Christ.

- Approximately one year after the Original Friendly Church had obtained title to all of the Property, certain members took their temporary leave of absence. And then, almost another year later, those individuals left the Original Friendly Church and the National Church of God in Christ and formed a new and independent entity, the Separated Friendly Church.

We conclude that the Property was acquired over time by the single entity that is the Original Friendly Church. Although the deeds only once identified the Original Friendly Church's corporate status as grantee, the deeds are not ambiguous: they clearly grant ownership of the lots to the entity named the "Friendly Church of God in Christ," in Sherman Texas, during the long time period when only one entity bore that name, i.e., the Original Friendly Church. Moreover, that same entity consistently maintained legal possession and operation of the Property as all the lots were acquired. The fact that the entity later changed its name does not change the facts of its acquisition, possession, and operation of the Property. Indeed, a name change has no effect on a corporation's identity or its property rights. *Nelson v. Detroit & Sec. Tr. Co.*, 56 S.W.2d 860, 862 (Tex. Comm'n App. 1933) ("The mere change of name has no effect whatever upon the identity of a corporation, or upon its property rights or liabilities."); *Dirt Arresters, Inc. v. H.C. Rental Properties, Inc.*, No. 05-98-00030-CV, 2000 WL 145095, at *1 (Tex. App.—Dallas Feb. 10, 2000, no pet.) (not designated for publication) ("A name change has no effect on a corporation's identity or its property rights or liabilities."). We conclude that in the context of the five

–12–

deeds evidencing title to the Property, the Original Friendly Church—at the time of acquisition known as the Friendly Church of Christ—is the same entity as the Powerhouse Church of God in Christ.[7]

We have re-framed Powerhouse's issue to acknowledge the different contexts in which the identity of the churches is important. We conclude that Powerhouse and Friendly are in fact separate and distinct entities, but we conclude further that the Original Friendly Church is the same entity as Powerhouse Church of God in Christ and is *not* the same entity as the Separated Friendly Church.

### The Competing Trespass to Try Title Claims

In its fourth issue, Powerhouse argues that Friendly did not meet its burden to prove the elements of its trespass to try title claim, which is the proper method of determining title to real property in Texas. TEX. PROP. CODE ANN. § 22.001(a). To prevail in a trespass to try title action, a plaintiff must usually (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled

---

[7] As a related conclusion, we necessarily reject the trial court's finding that:

the only remaining uncontested member of the Board of Trustees of Friendly Church of God in Christ, an unincorporated nonprofit association vested with power to transfer, pledge or assign the legal and equitable interests in the [Property] is Leonard Polk.

The evidence conclusively establishes that Polk was no longer a trustee of the Original Friendly Church after February 2016 (when meeting minutes indicate new trustees were installed), that he formally withdrew from the Original Friendly Church and the national church in August 2018, and that his trustee status is limited to his membership in the Separated Friendly Church. Accordingly, to the extent the deeds establish that the Original Friendly Church was the grantee of the various lots making up the Property, Polk has no power to transfer, pledge, or assign any interest in the Property.

with proof that possession was not abandoned. *Wilhoite v. Sims*, 401 S.W.3d 752, 760 (Tex. App.—Dallas 2013, no pet.). In this case, both parties claim ownership of the Property based upon the five deeds discussed above, i.e., they claim superior title out of common sources. *See id.*

When conducting a legal sufficiency review, we consider the evidence in the light most favorable to the verdict, crediting favorable evidence if a reasonable juror could, and disregarding contrary evidence unless a reasonable juror could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). However, we will sustain a legal sufficiency challenge on appeal if the record demonstrates that the evidence conclusively establishes the opposite of a fact vital to the trial court's resolution. *BNSF Ry. Co. v. Phillips*, 485 S.W.3d 908, 910 (Tex. 2015). The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller*, 168 S.W.3d at 827.

Friendly's claim to the Property rests entirely upon the names of the grantees on the deeds, i.e., the name "Friendly Church of Christ" on each deed and the additional description "an unincorporated religious association" in the 1970 deed. At some point in time after it withdrew from the Original Friendly Church, the Third Ecclesiastical Jurisdiction, and the national church, the Separated Friendly Church began calling itself the "Friendly Church of God in Christ," often appending the description "an unincorporated religious association."

–14–

Friendly offered expert testimony from Robert Minshew, who performed a title search on the Property. He testified that the Separated Friendly Church's adopted name—Friendly Church of God in Christ—is the name on the deeds and stated that he did not find any reference to an incorporated entity in his deed search. Based on this review of the face of the deeds, Minshew opined that the "Friendly Church of God in Christ" was the owner of Property. The names of the grantees, of course, are evident on the face of the instruments. But merely reading the names does not establish the actual identity of the grantee entities if those names have been used by more than one entity over time. In the previous discussion, we have concluded based on the history of the acquisitions that the deeds' references to the Friendly Church of God in Christ were references to the Original Friendly Church and that the Original Friendly Church is the same entity as the Powerhouse Church of God in Christ, *not* the Separated Friendly Church, regardless of what it calls itself.

Friendly's claim to be title owner of the Property based simply on its adopted name fails in the first instance because the evidence establishes conclusively that the Separated Friendly Entity publicly disclaimed being a Church of God in Christ. In August 2018, its members formally left the Original Friendly Church, disclaimed any desire to remain under the auspices of the National Church of God in Christ, and formed their own "Independent Religious Organization."[8] Polk testified that "[w]e

---

[8] We do not here make a judgment as to whether the Separated Friendly Church holds tenets of faith that are or are not in line with the National Church of God in Christ; that is a determination for the national

–15–

wanted to become an Independent Church because of the environment with Clayton Davis, and we wanted to break loose from the National, and just form our own church because we was—seemed like that we was not being represented properly." There is no evidence in the record establishing that the members of the Separated Friendly Church ever rejoined the National Church of God in Christ.

Moreover, when the members of the Separated Friendly Church left the Original Friendly Church, they abandoned any claim to the Property, which—we have determined—was deeded to the Original Friendly Church. A church entity that owns real property retains ownership despite changes in its membership. *See Brown v. Clark*, 102 Tex. 323, 334 (1909) ("It follows, we think, as a natural and proper conclusion, that the church to which the deed was made still owns the property, and that whatever body is identified as being the church to which the deed was made must still hold the title."). Here, we have concluded that the Original Friendly Church is the entity to which the five deeds transferred the Property. We have concluded further that the Powerhouse Church of God in Christ is the same entity as the Original Friendly Church. Thus, Friendly's claim to ownership of the Property is conclusively rebutted by the evidence. *See Wilhoite*, 401 S.W.3d at 760.

The evidence at trial would enable reasonable and fair-minded people to conclude that Powerhouse, and not Friendly, proved its trespass to try title claim as

church. We cite the Separated Church's withdrawal from the national church only as it relates to its contradictory adoption of the church's name on the deed, which we must analyze under neutral legal principles to determine title to the Property.

a matter of law. *See City of Keller*, 168 S.W.3d at 827. We sustain Powerhouse's fourth issue.

## Conclusion

We reverse the trial court's judgment and render judgment that Powerhouse is entitled to title and possession of the Property.

230824f.p05

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

POWERHOUSE MINISTRIES
CHURCH OF GOD IN CHRIST,
Appellant

No. 05-23-00824-CV     V.

FRIENDLY CHURCH OF GOD IN
CHRIST, Appellee

On Appeal from the 397th Judicial
District Court, Grayson County,
Texas
Trial Court Cause No. CV-18-1901.
Opinion delivered by Justice
Pedersen, III. Justices Partida-
Kipness and Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that Powerhouse Ministries Church of God in Christ is entitled to title and possession of the property located at 705 through 711 East Lamar Street, in Sherman, Texas.

It is **ORDERED** that appellant Powerhouse Ministries Church of God in Christ recover its costs of this appeal from appellee Friendly Church of God in Christ.

Judgment entered this 27th day of August, 2024.