**IN RE BCH DEVELOPMENT, LLC, Relator**

No. 05-16-01481-CV

Court of Appeals of Texas, Dallas.

Opinion Filed August 15, 2017

Thomas A. Culpepper, Michael A. Yanof, Cassie Dallas, Thompson, Coe, Cousins & Irons, L.L.P., Dallas, TX, Kristy Blanchard, Blanchard & Thomas, LLP, Dallas, TX, for Relator.

David W. Elrod, Worthy W. Walker, Brian A. Farlow, Barbara L. Wohlrabe, Dallas, for Real party in interest.

Before Justices Evans, Brown, and Schenck

## OPINION

Opinion by Justice Schenck

After the trial court granted real parties in interest's motion for summary judgment in this deed restriction case, the matter proceeded to a jury trial on attorney's fees pursuant to section 5.006 of the property code. TEX. PROP. CODE ANN. § 5.006 (West 2014). The jury returned a verdict awarding real parties in interest $290,000 in attorney's fees, rather than the full $579,954.45 they sought to recover. The trial court granted real parties in interest's request for a new trial.

Relator, BCH Development, LLC ("BCH"), filed a petition for writ of mandamus urging that we direct the trial court to vacate its new trial order because none of the specified reasons for ordering a new trial legally support relief in the form of a new trial. We agree and therefore conditionally grant mandamus relief and direct the trial court to vacate the September 21, 2016 Order Granting New Trial and enter a judgment on the jury verdict.

## BACKGROUND

This case arises from BCH's attempt to construct a home with a habitable attic in the Lakeview Heights Addition. Barbara Wohlrabe and Lakeview Heights Addition Property Owners' Association (collectively, the "Association") brought suit against BCH and Blanchard Homes, LLC asserting they were breaching and violating deed restrictions and seeking to enjoin them from constructing a dwelling that has more than one above-ground level or floor of living space, and from constructing a dwelling that has a habitable attic. The Association also asserted a claim for tortious interference, which it later abandoned. After the trial court granted the Association's motion for summary judgment and permanently enjoined BCH from building a dwelling in the neighborhood in excess of one story and with a habitable attic, the Association nonsuited its claims against Blanchard Homes, LLC.

At trial, the only remaining issue was an award of attorney's fees under the property code. One of the Association's attorneys testified as the expert for the Association. He opined that fees in the amount of $579,954.45 were reasonable in pursuing the breach and violation of the deed restrictions claims in light of the extensive work that had been put into the case. On

cross examination, he testified that the jury in a different, less complicated deed restriction case awarded $250,000 based on his testimony in that case. BCH's expert countered that the Association unnecessarily delayed seeking a summary judgment for a period of a year. The record—the Association's exhibit of its attorney's fees—shows that fees of approximately $361,000 accrued during the delay.[1] BCH's expert, who has handled hundreds of property owners' association cases, also testified as to what would be the reasonable hours expended during various phases of a deed restriction case. They totaled 500 to 600 hours. The jury returned a verdict awarding the Association $290,000. The Association moved for judgment notwithstanding the verdict or for a new trial. The trial court granted the Association's motion for new trial. This original proceeding followed.

## Standard for Granting Mandamus—Order Granting New Trial

■ A trial court's order granting a new trial after a jury trial is subject to mandamus review. *In re Zimmer, Inc.*, 451 S.W.3d 893, 898 (Tex. App.—Dallas 2014, orig. proceeding) (citing *In re United Scaffolding, Inc.*, 377 S.W.3d 685, 688–89 (Tex. 2012) (orig. proceeding)). A new trial order must initially satisfy two "facial requirements." *In re Bent*, 487 S.W.3d 170, 173 (Tex. 2016) (orig. proceeding). One, the order must state a legally appropriate reason for the new trial. *Id.* Two, the stated reason must be specific enough to indicate

that the trial court did not simply parrot a pro forma template but rather derived the articulated reason from the case's particular facts and circumstances. *Id.* The order must satisfy both requirements, or it reflects an abuse of discretion correctable by mandamus. *See United Scaffolding*, 377 S.W.3d at 688–89.

■ Further, even if a new trial order meets the facial requirements, a relator can show an abuse of discretion and an entitlement to mandamus relief if, after a merits review, the record does not support the trial court's rationale for ordering a new trial. *Bent*, 487 S.W.3d at 173; *In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 749 (Tex. 2013) (orig. proceeding).

## Discussion

A. Were the trial court's reasons for ordering a new trial both sufficiently specific and legally appropriate?

■ The order in this case cites (1) BCH's violation of limine orders limiting the scope of BCH's attorney fee expert's testimony,[2] (2) BCH's improper jury argument attacking the Association and its attorneys, criticizing the use of a contingency fee agreement and lack of segregation of fees, and stating that $150,000 was a reasonable fee through trial, and (3) factual and legal insufficiency of the evidence to support the jury's award of $290,000 in attorney's fees, as its bases for granting a new trial. Violation of limine orders, improper jury argument, and insufficiency of

---

1. BCH points out that the attorney's fees sought by the Association, in the amount of $579,954, less the fees incurred during this delay in moving for summary judgment, in the amount of $361,000, equals approximately $218,000. The Association responds that these amounts and this calculation were never mentioned to the jury.

2. The Order Granting Plaintiffs' Motion for New Trial identifies BCH's expert's testimony concerning the number of hours he believed would be reasonable for prosecution of a deed restriction case like this one, and BCH's attempts to present testimony that plaintiffs' attorneys' "block billing" statements were somehow improper or impermissible, as violations of limine orders.

the evidence, if established, can serve as legally proper reasons for granting a new trial. *See In re United Servs. Auto. Ass'n*, 446 S.W.3d 162, 174 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding) (the violation of a limine order can serve as a basis for a new trial order), *mand. denied*, 487 S.W.3d 170 (Tex. 2016); *Living Ctrs. of Tex., Inc. v. Penalver*, 256 S.W.3d 678, 681–82 (Tex. 2008) (holding that improper incurable jury argument is a legally appropriate ground for a new trial); *Zimmer*, 451 S.W.3d at 898 (noting that factual insufficiency of the evidence to support the jury's verdict, if established, is a legally proper reason for granting a new trial). Thus, the order complies with the first facial requirement. *Toyota*, 407 S.W.3d at 756–57.

The trial court's order also satisfies the second requirement of specificity. It recites the specific facts and circumstances of the case that led the trial judge to reach her conclusions. The order is specific enough both to permit BCH to attack it and to enable our review. *See Zimmer*, 451 S.W.3d at 898.

**B. Were the trial court's reasons for granting a new trial valid and correct?**

▆▆▆ Simply articulating understandable, reasonably specific, and legally appropriate reasons is not enough to sustain a new trial order; the reasons must be valid and correct. *Id.* (citing *Toyota*, 407 S.W.3d at 759). We must conduct a careful "merits review" of the record. *See Toyota*, 407 S.W.3d at 759. In a mandamus proceeding, we may not substitute our judgment for that of the trial court. *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004) (orig. proceeding). But neither may the trial court substitute its judgment for that of the jury in granting a new trial. *In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 212 (Tex. 2009) (orig. proceeding); *Toyota*, 407 S.W.3d at 758 ("If . . . a

trial court's articulated reasons are not supported by the underlying record, the new trial order cannot stand."). Thus, using a factual sufficiency standard, we will engage in a review of the entire trial record to determine whether it supports the trial court's reasons for granting a new trial. *See Bent*, 487 S.W.3d at 180. If the record does not support the trial court's stated reasons, then the trial court will have abused its discretion in granting a new trial. *See Toyota*, 407 S.W.3d at 761 (holding the trial court abused its discretion by granting a new trial because the record did not support the articulated reason).

**1.  Limine Orders and Jury Arguments**

▆▆▆ As to the trial court's assertion that BCH's alleged violations of motion-in-limine orders are bases for granting a new trial, we note that the purpose of a motion in limine is to prevent a party from asking prejudicial questions and introducing evidence in front of the jury without first asking the court's permission. *See Weidner v. Sanchez*, 14 S.W.3d 353, 363 (Tex. App.—Houston [14th Dist.] 2000, no pet.). A motion in limine itself preserves nothing for review. *In re R.V. Jr.*, 977 S.W.2d 777, 780 (Tex. App.—Fort Worth 1998, no pet.). The complaining party must immediately object and also request the trial court to instruct the jury to disregard the evidence introduced in violation of a limine order. *State Bar of Tex. v. Evans*, 774 S.W.2d 656, 658 n.6 (Tex. 1989) (per curiam); *Weidner*, 14 S.W.3d at 363.

Before BCH called its expert witness to testify, the Association moved to exclude certain testimony of this witness, arguing BCH failed to disclose certain expert opinions the Association believed BCH would attempt to elicit based on BCH's opening statement. In response, the trial court ruled that BCH's expert would not be

allowed to opine as to (1) the appropriate amount of fees that should be segregated, (2) the reasonable hourly rates in Dallas County (BCH conceded its expert would not be challenging the Association's expert's opinion on reasonable rates), and (3) the specific amount that should have been charged.

The trial court considered BCH's attempt to present testimony concerning the number of hours that would be reasonable for prosecution of a deed restriction case like this one, and attempt to present testimony that the Association's attorneys' "block billing" statements were somehow improper, to violate its limine orders. A review of the challenged comments reveals, however, that they did not reach into any of the topics precluded by the motion and the resulting order.

As for BCH's expert's testimony concerning a reasonable number of hours for prosecution of a case like this, in connection with the Association's request that

BCH's expert be precluded from testifying on certain matters, the trial court affirmatively permitted that testimony, indicating that he could "say that, in his experience, someone working on a summary judgment of the type that was permitted or presented in this case would have been 20 hours not 60 hours." The court went on to clarify, after BCH's attorney asked whether he could ask the expert how many billable hours it should take to drive this type of case to resolution based upon his experience, that "he can testify as to the hours, but not to the amounts." Thus, BCH's expert's testimony concerning billable hours did not violate a limine order and cannot serve as a legally proper reason for granting a new trial.

■■■ As to testimony concerning "block billing," it also was not subject to a limine order. In fact, BCH's attorney elicited testimony concerning block billing from the Association's expert witness on cross examination without objection.[3] In addition,

3. The following exchange occurred between BCH's counsel and the Association's expert witness:

Q.  And when you bill in this manner, sir, is that commonly required [sic] to as block billing?
A.  It's called block billing.
Q.  And is it your understanding that Courts disfavor block billing?
A.  Absolutely not. In fact, I've testified in attorneys' fees cases where we don't even introduce the fee statements. It's not required.
Q.  And so is it your testimony that Courts do not—or do you have an opinion—let me strike that. Have you read any cases about block billing and whether the Court—whether Courts favor block billing?
A.  It depends on what Court you're in. If you're in a bankruptcy court, you cannot block bill.
Q.  Okay. Have you read any cases from the Fifth Circuit about what they think about block billing?
A.  It depends if you're talking about a bankruptcy case. If you're talking about

a bankruptcy case, the Fifth Circuit says you can't block bill in bankruptcy cases because that's a debtor, and the bankruptcy courts won't let you block bill.
Q.  What about non-bankruptcy cases, sir?
A.  In non-bankruptcy cases, no, I'm not familiar with any prohibition by the Fifth Circuit in block billing to get attorneys' fees. If you have the case, let me see it please.
. . . .
Q.  So, at least as far as you're concerned, there is—block billing is fine, true?
A.  In getting recovery of attorneys' fees in Texas under 5.006, block billing is fine because you don't even have to introduce your fee statements.
Q.  Have you ever done any research about block billing yourself? Have you done any?
A.  Yes.
Q.  Okay. You have done research on block billing?
A.  In bankruptcy cases, yes.

the Association's own attorney questioned its expert on block billing.[4] The trial court did not enter a limine order concerning testimony, evidence, or argument as to whether task billing was necessary until after the Association's expert had already testified. Thus, testimony elicited from the Association's expert concerning "block billing" did not violate a limine order and cannot serve as a legally proper reason for granting a new trial.

When BCH's counsel attempted to question BCH's expert as to what block billing does to the bill, the Association objected and the court sustained the objection before the basis for the objection could be stated. BCH's expert did not answer the question. Thereafter, the trial court instructed the jury as follows:

> Ladies and gentlemen of the jury, I just want to give you an instruction that—or an admonition to follow. You have previously heard examination questions, arguments, or testimony which may have caused you to believe that Texas law prohibits block billing in an attorneys' fee statement. That is an incorrect statement of Texas law. You are to disregard

questions, arguments, or testimony with regard to the issue of block billing.

■ When a trial court instructs the jury to disregard evidence offered in violation of a motion in limine, we may review that evidence to determine whether an instruction to disregard was adequate to cure its admission. *In re City of Houston*, 418 S.W.3d 388, 397 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding). "Violations of an order on a motion in limine are incurable if instructions to the jury would not eliminate the danger of prejudice." *Dove v. Dir., State Emps. Workers' Comp. Div.*, 857 S.W.2d 577, 580 (Tex. App.—Houston [1st Dist.] 1993, writ denied) (citing *Dennis v. Hulse*, 362 S.W.2d 308, 309 (Tex. 1962)). We presume that jurors follow the instructions they are given. *Taylor v. Fabritech, Inc.*, 132 S.W.3d 613, 626 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). In this case, there is no reason to conclude that the instruction actually failed to cure the effect of an unanswered question concerning block billing. Thus, to the extent the trial court granted a new trial on that basis, it cannot serve as a legally proper reason for granting a new trial.

> Q. In non-bankruptcy cases, sir. I'm talking about civil cases that aren't bankruptcy cases.
> A. Mr. Culpepper, I'm pretty much aware of the cases that have to deal with proving up attorneys' fees in state court in Texas, and I'm not familiar with a case that says you cannot block bill and recover attorneys' fees. If you have one, I'd be happy to read it. I'm not familiar with a case that prohibits block billing.

4. The following exchange took place between the Association's counsel and the Association's expert:

> Q. Now there was a great deal of talk about—he mentioned block billing. And would the other type of billing where you put the amount down for each individual task be called task billing?
> A. It's task billing.

> Q. And, [Association's expert], is it your opinion—are you aware of any opinion which prohibits the recovery of attorneys' fees based on block billing?
> A. Absolutely not. That [sic] why he—if he's got one, I wanted Mr. Culpepper to show me because I'm not aware of one.
> Q. Have—now while you might be able to task bill in a case, is there anything wrong with block billing?
> A. Absolutely not. That's why I said for 12 percent of our clients, we bill block bill. For 10 percent, we task bill. It's a specific request by client. If you're doing bankruptcy work, the bankruptcy—if you're doing litigation for a debtor in a bankruptcy case, then the bankruptcy court requires you to do task billing, not block billing.

As to the trial court's assertion that BCH engaged in improper jury argument during closing argument, we note that a litigant is entitled to have his counsel argue the facts of the case to the jury. *Clark v. Bres*, 217 S.W.3d 501, 510 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (citing *Texas Sand Co. v. Shield*, 381 S.W.2d 48, 57–58 (Tex. 1964)). Reasonable inferences and deductions from the evidence are permissible as well during closing argument. *PopCap Games, Inc. v. MumboJumbo, L.L.C.*, 350 S.W.3d 699, 721 (Tex. App.—Dallas 2011, pet. denied). Hyperbole is also generally a permissible rhetorical technique in closing argument. *Id.* Counsel may comment on the credibility of witnesses. *See id.* at 722 (arguing that jury should accept one witness's opinion instead of another's was not improper). Trial counsel should be given wide latitude in arguing the evidence and the reasonable inferences from the evidence to the jury. *Clark*, 217 S.W.3d at 510.

A complaint about improper, but curable, jury argument is waived by the failure to object at trial. *Standard Fire Ins. v. Reese*, 584 S.W.2d 835, 841 (Tex. 1979). A complaint of incurable jury argument, however, may be asserted and preserved in a motion for new trial, even in the absence of a timely objection during trial. Tex. R. Civ. P. 324(b)(5); *Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009). Instances of incurable improper jury arguments are rare. *See Penalver*, 256 S.W.3d at 680. Examples of incurable improper jury arguments can include appeals to racial prejudice; unsupported accusations of witness tampering by the opposing party, and unsupported, extreme, and personal attacks on opposing parties and witnesses. *Id.* at 681; *see also Cottman Transmission Sys., L.L.C. v. FVLR Enters., L.L.C.*, 295 S.W.3d 372, 380 (Tex. App.—Dallas 2009, pet. denied) (recognizing that incurable argument can include unsupported charges of perjury and the use of inflammatory epithets such as "liar" and "cheat").

Of the closing argument statements the trial court considered to be improper, the Association objected to only BCH's attorney's statements that $150,000 was a reasonable fee in this case and "You can't—the other expert can't segregate." The Fourteenth Court of Appeals decided that trial error that is not preserved for appellate review is not available as proper grounds for a new trial. *In re Athans*, 478 S.W.3d 128, 139 (Tex. App.—Houston [14th Dist.] 2015) (orig. proceeding). We agree. We conclude the unobjected to arguments the trial court considered to be attacks against the Association and its attorneys and critical of the use of a contingency fee agreement were not preserved and did not amount to fundamental error. Thus, they cannot serve as legally proper reasons for granting a new trial.

As to the jury argument that $150,000 was a reasonable attorney's fee through trial, in accordance with the trial court's directive, BCH's expert testified concerning reasonable billable hours in a case like this. They totaled 500 to 600 hours. The evidence established Wohlrabe, who is an attorney with the firm representing the Association, charges $300 per hour for her professional services. Thus, BCH's comment that a reasonable fee was $150,000 was a reasonable inference or deduction from the evidence, and did not violate the trial court's limine order concerning a specific amount of fees, because the order was directed to BCH's expert's testimony, not to BCH's attorney and argument. Thus, the argument was not improper.

As to argument concerning segregation of fees, BCH's counsel stated:

And [the Association's expert] told you, well, I took out $25,000. If you look at the fee statements, remember he had a cause of action for years, one whole cause of action that he dropped, he couldn't recover attorney's fees on. And he's saying, but that was only $25,000. If you look at the fee statements, you will see that they should have segregated hundreds of thousands of dollars related to that claim.

Counsel for the Association objected to this statement without stating the grounds, and the trial court sustained the objection. The evidence established that segregation of recoverable fees from non-recoverable fees was required in this case. The jury heard evidence that the fees were not sufficiently segregated, that the fees related to the tortious interference with contract claim were not recoverable, and that the tortious interference with contract claim was dismissed after it had been pending for years. Thus, BCH's counsel's comments about the $25,000 segregation and the claim upon which the Association could not recover were comments on the facts and reasonable inferences therefrom. BCH's counsel referred the jury to the fee statements, which were in evidence, to decide the issue of segregation itself and the comment about hundreds of thousands of dollars was hyperbole. The arguments were, thus, not improper.

Accordingly, the arguments cited as reasons for granting a new trial are not correct or legally appropriate bases upon which to order a new trial.

### 2. Sufficiency of the Evidence

■ As to the sufficiency of the evidence to support the jury's verdict, the trial court stated there was no expert testimony or other evidence that $290,000 was a reasonable attorney's fee in this case and there was insufficient evidence to support

any figure or range of figures that the jury might have used to determine that a reasonable attorney's fee in this case was $290,000. The court continued by stating the only dollar figure presented to the jury as to the Association's reasonable attorney's fees was the $579,954.45 figure presented by the Association. We disagree.

■ When a party puts on evidence that contradicts the fees sought by the plaintiff—whether by cross examination of the plaintiff's expert or by presenting its own expert—the trier of fact is not bound to the number provided by the plaintiff's expert. *Powell Elec. Sys., Inc. v. Hewlett Packard Co.*, 356 S.W.3d 113, 128 (Tex. App.—Houston [1st Dist.] 2011, no pet.). While the Association's expert opined fees in the amount of $579,954.24 were reasonable and necessary, BCH's expert testified as to fees that could have been avoided by seeking summary judgment earlier in the case, and opined that a case like this one should have required 500 to 600 hours of attorney time. The evidence also established Wohlrabe's billable rate is $300 per hour. And 500 hours at $300 per hour equates to a minimum of $150,000, as noted previously. During closing argument, the trial court permitted, over objection, argument that "had [the Association] chosen to file [their motions for summary judgment] early on . . . they could have cut out a tremendous amount of fees they incurred after March of 2014. . . . They said they incurred $429,381, if you add it up." Subtracting this sum from the claimed fees of approximately $579,000, leaves approximately $150,000.

Thus, the evidence showed a range of fees from $150,000 to slightly over $579,000. The jury awarded the Association $290,000, well within the range supported by the evidence. Under these circumstances, the evidence was sufficient to support the jury's award of $290,000. *See*

*Garden Ridge, L.P. v. Clear Lake Ctr., L.P.*, 504 S.W.3d 428, 445 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Ropa Expl. Corp. v. Barash Energy, Ltd.*, No. 02-11-00258-CV, 2013 WL 2631164, at *12 (Tex. App.—Fort Worth June 13, 2013, pet. denied) (mem. op.) (affirming jury's award of attorney's fees despite the lack of documentary evidence supporting the award when the award was within the range of evidence presented at trial); *Pitts v. Dallas Cty. Bail Bond Bd.*, 23 S.W.3d 407, 415 (Tex. App.—Amarillo 2000, pet. denied) (affirming trial court's award of attorney's fees because the amount was within the range supported by the evidence); *see also, e.g., Sw. Energy Prod. Co. v. Berry–Helfand*, 491 S.W.3d 699, 713 (Tex. 2016) ("The jury generally has discretion to award damages within the range of evidence presented at trial.").

Thus, to the extent the trial court granted a new trial based on factual insufficiency of the evidence to support the jury's award of $290,000 in attorney's fees, that reason is not correct or legally appropri-ate, and the trial court abused its discretion in granting a new trial for that reason.

To the extent the trial court granted a new trial on the basis of cumulative error, that basis is not a reason that is legally appropriate. When there are no errors, we reject cumulative error arguments. *Caro v. Sharp*, No. 03-02-00108-CV, 2003 WL 21354602, at *8 (Tex. App.—Austin June 12, 2003, pet. denied) (mem. op.).

### CONCLUSION

The trial court abused its discretion by granting a new trial based on grounds that were not legally appropriate. Therefore, we conditionally grant BCH's petition for writ of mandamus. A writ will issue only if the trial court fails to vacate its September 21, 2016 Order Granting New Trial and fails to enter a judgment on the jury's verdict.