**AFFIRMED and Opinion Filed October 12, 2023**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-22-00719-CV**

**PATRICIA MONZINGO, INDIVIDUALLY AND AS NEXT FRIEND OF W.J.M., A MINOR, AND MADISON MONZINGO, Appellants**

**V.**

**JOHN WOODROW FLORIES, Appellee**

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-06028**

## MEMORANDUM OPINION

Before Justices Goldstein, Garcia, and Miskel
Opinion by Justice Garcia

This is a personal-injury case arising from a two-vehicle accident. The jury found for the plaintiffs on their negligence claims but rejected their gross-negligence claims. The plaintiffs appeal the judgment rendered on the jury's verdict. In three issues, they complain about (1) the trial judge's decision allowing an untimely designated defense expert to testify, (2) the trial judge's refusal to submit a spoliation jury instruction, and (3) allegedly biased statements by the trial judge during trial. We overrule all three issues and affirm.

# I. BACKGROUND

## A. Facts

The trial evidence supported the following facts.

Appellant Patricia Monzingo is the mother of appellants Madison Monzingo and W.J.M.[1]

This suit arises from a two-vehicle traffic accident that occurred on May 20, 2016, outside the town of Giddings, Texas. At the time of the accident, the Monzingos were traveling from Dallas to Victoria southbound on U.S. Highway 77. They were traveling in an SUV, and Patricia Monzingo was driving. The other vehicle involved in the accident was a white van driven by appellee John Flories. Flories was traveling westbound on County Road 135, which crossed Highway 77. A stop sign required him to stop at the intersection as he approached from the east. A nonparty eyewitness testified that Flories slowed down but did not stop before attempting to cross Highway 77. When Flories attempted to cross Highway 77, the Monzingos' SUV collided with his van.

After the accident, the Monzingos were transported by ambulance to an emergency room. They spent the night at a nearby hotel, and the next day someone picked them up and took them back to Dallas.

---

[1] At the time of the accident in question, Madison Monzingo was 19 years old, and W.J.M. was almost 15 years old.

**B.     Procedural History**

In May 2018, the Monzingos sued Flories and several other defendants for injuries they suffered in the 2016 accident. The case was assigned to the 116th District Court of Dallas County, Judge Tonya Parker presiding. By the time of trial, Flories was the only defendant remaining in the case.

In February 2020, the Monzingos filed a motion to strike one of Flories's expert witnesses, neuropsychologist Justin O'Rourke, Ph.D., on the ground that Flories had not timely produced the general substance of O'Rourke's mental impressions or opinions as required by Texas Rule of Civil Procedure 194.2(f). They also sought a limine order concerning O'Rourke in their November 18, 2021 motion in limine. Judge Parker heard arguments on this point at a November 19, 2021 pretrial conference, and she orally ruled that O'Rourke would be allowed to testify.

The case was reached for trial in April 2022. A week before trial began, Judge Parker arranged for another judge, Judge Eric Moyé, to conduct the trial. Judge Moyé then presided over the jury trial, which took place April 11–13, 2022. At the beginning of the trial, appellants re-urged their limine request regarding O'Rourke's testimony, and Judge Moyé declined to reconsider Judge Parker's earlier ruling on that point. O'Rourke was the last witness to testify at trial.

Flories stipulated that his negligence proximately caused the accident. The jury found that Flories's negligence proximately caused injuries to each of the Monzingos. The jury assessed past damages for each of them but found that each of

them had no future damages. The jury also refused to find that Flories was grossly negligent. Judge Moyé signed a judgment in accordance with the jury verdict.

The Monzingos timely filed a motion for new trial. That motion was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c). Judge Parker heard the motion within her plenary power, but she never signed an order concerning the motion. The Monzingos then timely perfected this appeal.

## II.  ISSUES PRESENTED

The Monzingos raise three issues on appeal.  We paraphrase them as follows:

1. Was the denial of the Monzingos' motion to strike defense expert Justin O'Rourke harmful error?

2. Did the trial judge commit harmful error by refusing to grant the Monzingos a remedy for spoliation of evidence by Flories?

3. Did the trial judge commit harmful error by failing to act as a neutral judge during the trial, or was there harmful cumulative error?

## III.  ANALYSIS

### A.  Issue One: Was the denial of the Monzingos' motion to strike defense expert Justin O'Rourke harmful error?

For the reasons that follow, we conclude that Judge Parker did not abuse her discretion by denying the Monzingos' motion to strike O'Rourke from testifying at trial.

#### 1.  Standard of Review

The Monzingos' request to exclude O'Rourke's testimony was based on Texas Rule of Civil Procedure 193.6. Although they contended at oral argument that

–4–

the abuse-of-discretion standard of review should not apply to Judge Parker's decision on their request, the supreme court recently held that Rule 193.6 rulings are indeed reviewed for abuse of discretion. *Jackson v. Takara*, No. 22-0288, 2023 WL 5655867, at *4 (Tex. Sept. 1, 2023) (per curiam).

In general, a trial judge abuses her discretion if she acts arbitrarily, unreasonably, or without regard to any guiding rules and principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). More concretely, a trial judge abuses her discretion if (1) she fails to analyze or apply the law correctly, or (2) with regard to factual issues and matters committed to her discretion, she can reasonably reach only one decision based on the record before her but fails to do so. *See VSDH Vaquero Venture, Ltd. v. Gross*, No. 05-19-00217-CV, 2020 WL 3248481, at *4 (Tex. App.—Dallas June 16, 2020, no pet.) (mem. op.).

### 2. Applicable Law

This issue turns on the application of several discovery rules to the facts of this case. We note at the outset that several of the discovery rules were amended after this case was filed in 2018. *See Final Approval of Amendments to Texas Rules of Civil Procedure 47, 99, 169, 190, 192, 193, 194, 195, 196, 197, and 198*, 84 TEX. B.J. 149 (Feb. 2021) (Misc. Docket No. 20-9153). These amendments generally apply only to cases filed on or after January 1, 2021. *See id*. at 149, ¶ 2. All references

to the Rules of Civil Procedure in this opinion are to the version of the Rules applicable to this case.

Under the applicable discovery rules, the parties to this case could request disclosures from the other parties regarding testifying expert witnesses. *See* TEX. R. CIV. P. 194.2(f). The request could include a request for "the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them." *Id*. 194.2(f)(3). Rule 195 governed the response deadline. *See id*. 194.3(b), 195.2.

The applicable rules provided for both (1) the automatic exclusion of requested information not timely disclosed and (2) certain exceptions to that automatic exclusion. Specifically, Rule 193.6 provided as follows:

> A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:
>
> > (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or
>
> > (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

*Id*. 193.6(a).

A party seeking to exclude evidence under Rule 193.6 bore the threshold burden of proving a violation of the discovery rules. *See Ramirez v. Welch*, No. 05-16-00681-CV, 2018 WL 3725254, at *4 (Tex. App.—Dallas Aug. 6, 2018, no pet.)

(mem. op.). A party seeking to avoid the automatic exclusion bore the burden of establishing good cause or the absence of unfair surprise or unfair prejudice. TEX. R. CIV. P. 193.6(b). Moreover, a finding of good cause or of the lack of unfair surprise or unfair prejudice was required to be supported by the record. *Id*. A finding of good cause or lack of unfair surprise or unfair prejudice could be supported by counsel's uncontested representations to the trial judge about the state of discovery in the case. *Jackson*, 2023 WL 5655867, at *4.

In determining whether a party has adequately shown a lack of unfair surprise or unfair prejudice from its discovery violation, a trial judge may consider whether the other parties had enough information to reasonably assess settlement, to avoid trial by ambush, and to prepare rebuttal evidence. *See VSDH Vaquero Venture*, 2020 WL 3248481, at *4.

### 3. Relevant Facts

In February 2020, the Monzingos filed a motion to strike Flories's expert witness Justin O'Rourke, Ph.D., pursuant to Rule 193.6 because Flories had disclosed O'Rourke's opinions late. In November 2021, Judge Parker heard the motion to strike at a pretrial hearing and orally overruled the motion. The following facts were reflected in the court's file or otherwise developed at that hearing.

A scheduling order required Flories to make his expert-witness designations, including the information listed in Rule 194.2(f), by February 5, 2020. The parties filed a Rule 11 agreement providing that Flories's expert-designation deadline was

extended from February 5 to February 19, 2020. The scheduling order established February 24, 2020, as the end of the discovery period.

At the motion-to-strike hearing, the Monzingos' counsel asserted that Flories disclosed O'Rourke's identity and the general subject-matter of his testimony on the deadline of February 19, 2020, but failed to disclose his mental impressions and opinions at that time. Flories's counsel responded that O'Rourke "was timely designated with a Rule 194 description of what he would testify about." A copy of Flories's February 19 expert designation was attached to the Monzingos' motion to strike.[2] The designation identified O'Rourke as a board-certified clinical neuropsychologist, and it disclosed the subject matter of O'Rourke's testimony and his opinions as follows:

> [O'Rourke] is expected to testify as to the Plaintiff, Patricia Monzingo's past and current medical conditions, proposed future medical needs and Plaintiff's alleged traumatic brain injury ("TBI").
>
> . . . .
>
> . . . He is expected to testify regarding medical causation and damages, including that the injuries claimed by Plaintiff are not as extensive as claimed by Plaintiff, as well as his own opinion as to the reasonable treatment needed, if any, by Plaintiff, and the reasonable cost of said treatment. He may testify regarding any pre-existing injuries or conditions of Plaintiff which exist or yet may be discovered,

---

[2] The Monzingos did not seek to have Flories's February 19 expert designation admitted into evidence at the motion-to-strike hearing, and documents attached to motions are generally not considered evidence unless they are offered and admitted as such by the trial judge. *See, e.g.*, *Ramirez v. Welch*, No. 05-16-00681-CV, 2018 WL 3725254, at *4 n.3 (Tex. App.—Dallas Aug. 6, 2018, no pet.) (mem. op.). But both sides discussed the contents of the designation at the hearing, and both sides quote the designation in their appellate briefs. We conclude that we may consider the designation's contents on appeal. *See id.*; *see also* TEX. R. APP. P. 38.1(g) ("In a civil case, the court [of appeals] will accept as true the facts stated [in an appellant's brief] unless another party contradicts them.").

–8–

and other injuries or condition[s] of Plaintiff which are unrelated to the incident at issue. . . .

Dr. O'Rourke's opinions are set out in his report which will be produced in accordance with the Texas Rules of Civil Procedure.

Flories's counsel also argued that O'Rourke generated an expert report that was produced to the Monzingos on February 24, 2020, and that the Monzingos had not been prejudiced by the timing of Flories's expert disclosures. The Monzingos' attorneys agreed that they received O'Rourke's report, did not dispute the February 24 date asserted by Flories's counsel, and did not dispute that the report contained O'Rourke's mental impressions and opinions. They did argue, however, that they were prejudiced by the report's untimeliness.

Judge Parker orally overruled the Monzingos' motion to strike, stating that she was persuaded that Flories had shown that the late disclosure of O'Rourke's opinions had not caused unfair surprise or prejudice.

### 4. Application of the Law to the Facts

We agree with the Monzingos that they carried their threshold burden of showing that Flories's disclosure of O'Rourke's mental impressions and opinions was late. Flories disputes this premise, arguing that his timely February 19, 2020 disclosure adequately disclosed the general substance of O'Rourke's mental impressions and opinions because it stated that O'Rourke would testify about medical causation, damages, the reasonable treatment (if any) that Patricia Monzingo needed, and the reasonable cost of such treatment. We disagree with

Flories. The February 19, 2020 disclosure revealed the subject matters on which O'Rourke would testify, but it did not reveal "the general substance of [his] mental impressions and opinions and a brief summary of the basis for them" as required by Rule 194.2(f)(3). The only statement that arguably constituted an opinion was the statement that O'Rourke was expected to testify "that the injuries claimed by Plaintiff are not as extensive as claimed by Plaintiff," and even then no basis was given for the opinion. Accordingly, we conclude that the Monzingos are correct that Flories did not timely comply with Rule 194.2(f)(3).

Next we turn to the stated basis for Judge Parker's decision, which was that Flories had carried his burden to show that the late disclosure of O'Rourke's mental impressions and opinions did not cause unfair surprise or unfair prejudice to the Monzingos. We first note that the Monzingos contend that Judge Parker erroneously placed the burden of proof on them to affirmatively show unfair surprise or prejudice. But the record negates the Monzingos' contention. At the end of the pretrial conference at which Judge Parker heard the Monzingos' motion to strike, she stated on the record that she "did not lack clarity about who had the burden" and that she was persuaded that Flories had carried the burden to show the absence of unfair surprise or prejudice.

In the trial court, Flories argued that the late disclosure of O'Rourke's mental impressions and opinions did not unfairly surprise or unfairly prejudice the Monzingos for the following reasons. Flories disclosed O'Rourke's mental

–10–

impressions and opinions to the Monzingos on February 24, 2020, which was only five days late. (On appeal, the parties appear to agree that this disclosure actually occurred on February 25, which was six days late.) At that point, the Monzingos still had time under the parties' Rule 11 agreement to depose O'Rourke if they wanted to. Indeed, the Rule 11 agreement suggests that the parties knew the Monzingos might take expert depositions late in the discovery period because the agreement extended the expert-challenge deadline to March 6, 2020, or, for the Monzingos, seven days after the deposition of a defense expert. Flories also pointed out that the Monzingos had had O'Rourke's report for around a year and a half by the time of the motion-to-strike hearing in November 2021.

The Monzingos responded that they were unfairly prejudiced by the tardiness of the disclosure of O'Rourke's opinions because Flories deposed the Monzingos' neuropsychology expert, Dr. David Tucker, roughly one day before Flories disclosed the substance of O'Rourke's competing neuropsychology opinions. Flories responded (1) that the rules did not compel him to disclose his expert's opinions before deposing the Monzingos' experts and (2) in any event, Tucker could have supplemented his opinions after reviewing O'Rourke's report.

On appeal, the Monzingos repeat their argument that they were unfairly prejudiced by the fact that Flories did not disclose O'Rourke's opinions until after he had deposed the Monzingos' competing neuropsychology expert Tucker.[3]

We conclude that Judge Parker did not abuse her discretion. Based on the record, she reasonably could have concluded that the following facts and circumstances were present:

- Flories timely disclosed O'Rourke's identity, his credentials, and the subjects on which he would testify.

- Flories adequately disclosed the general substance of O'Rourke's mental impressions and opinions a few days late but still 17 or 18 days before the end of the discovery period.

- The parties' Rule 11 agreement showed that they contemplated that the Monzingos might depose Flories's experts right up to the end of the discovery period.

- By the time of the motion-to-strike hearing, the Monzingos had had over a year and a half to digest and prepare to meet O'Rourke's opinions.

Based on these facts and circumstances, Judge Parker could reasonably conclude that the late disclosure of O'Rourke's opinions did not deprive the Monzingos of the ability to reasonably assess settlement, subject them to trial by ambush, or deny them a reasonable opportunity to rebut O'Rourke's testimony. *See VSDH Vaquero*

---

[3] In their reply brief, the Monzingos add a new argument that Flories also never produced a list of the materials O'Rourke reviewed, contrary to Rule 194.2(f)(4)(A). But we do not consider arguments raised for the first time in a reply brief. *Hunter v. PriceKubecka, PLLC*, 339 S.W.3d 795, 803 n.5 (Tex. App.—Dallas 2011, no pet.).

*Venture*, 2020 WL 3248481, at \*4. Thus, she did not abuse her discretion by denying the Monzingos' motion to strike.

At oral argument, the Monzingos argued that our recent opinion in *F 1 Construction* supports their position. *See F 1 Constr., Inc. v. Banz*, No. 05-19-00717-CV, 2021 WL 194109 (Tex. App.—Dallas Jan. 20, 2021, no pet.) (mem. op.). We disagree. In that case, the proponent of the undisclosed evidence identified no evidence or facts showing the absence of unfair surprise or unfair prejudice. *Id*. at \*3. As discussed above, the record in this case adequately substantiates the trial judge's ruling. Thus, *F 1 Construction* is distinguishable.

### 5. Conclusion

We overrule the Monzingos' first issue on appeal.

## B. Issue Two: Did the trial judge commit harmful error by refusing to grant the Monzingos a remedy for spoliation of evidence by Flories?

In issue two, the Monzingos argue that Judge Moyé erred by refusing to give a spoliation instruction to the jury. They contend that they proved that Flories spoliated a recorded statement that he gave soon after the accident in question. After addressing an unusual error-preservation problem, we conclude that the Monzingos have failed to show an abuse of discretion.

### 1. Error Preservation

The test for determining whether a party has preserved jury-charge error is whether the party (1) timely and plainly made the trial judge aware of the complaint and (2) obtained a ruling. *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 829

(Tex. 2012). Jury-charge complaints generally must be presented to the trial judge after the jury charge has been prepared and given to the parties or their attorneys for examination. *See id.* at 829–31; *see also* TEX. R. CIV. P. 272–74. If the complaint is based on the trial judge's failure to submit something to the jury, *Cruz* indicates that error is not preserved unless the record affirmatively shows that the omitted material is missing because the trial judge knowingly refused to submit it and not because of an oversight. *See* 364 S.W.3d at 831.

Here, the clerk's record contains the Monzingos' proposed jury charge, which they filed more than four months before trial. It contained spoliation instructions. Then, on the first day of trial, the Monzingos filed a "Motion for Sanction for Spoliation of Evidence" in which they set forth the factual and legal bases for their claim that Flories had spoliated evidence and requested a spoliation jury instruction as a sanction. However, we see nothing in the record suggesting that the Monzingos ever brought this motion to Judge Moyé's attention.

The jury charge that was submitted to the jury did not include any spoliation instructions or any reference to spoliation at all. The problem is that the jury-charge conference—or at least some of it—took place off the record, and no objections or requests by the Monzingos were recorded. At oral argument in this appeal, the Monzingos' attorney, who was also one of their trial attorneys, represented to us that he objected to the absence of a spoliation instruction during the charge conference and that he thought the court reporter was transcribing the charge conference. The

record does not conclusively refute his assertions. On the last day of trial, after both sides rested and closed, Judge Moyé sent the jury out and apparently began conferring with the attorneys about the jury charge immediately. The reporter's record shows the following:

> THE BAILIFF: All rise.
>
> *(Jury leaves the courtroom.)*
>
> THE COURT: Mr. Kemble [an attorney for Flories], I'm going to need your language for the last sentence of Question Number 3 on Page 12.
>
> Everybody have a seat.
>
> We are off the record.
>
> *(Off-the-record discussion ensued.)*
>
> THE BAILIFF: All rise.
>
> *(Jury enters the courtroom.)*

After that, Judge Moyé asked Flories's attorneys if they had an issue they wanted to raise, and one of them replied that they had an objection to some unspecified "supplemental instructions" and that they needed to raise the issue "because Ms. Robert [the court reporter] wasn't her[e]." Judge Moyé noted that the objection was timely made and said, "[W]e will put it on the record subsequently." Then he began to read the jury charge to the jury, but he was soon interrupted when the jury's lunch arrived. So he sent the jury out for lunch, allowed Flories's attorney to put two objections to the jury charge on the record, and overruled the objections. After a lunch recess, Judge Moyé skipped reading the charge to the jury based on the jury's

–15–

representations that all jurors had read the charge during the recess. The attorneys presented closing arguments, and the jury returned its verdict later that afternoon.

It is not clear what happened. We are reasonably confident that a charge conference of some kind took place during the "Off-the-record discussion" noted in the reporter's record passage quoted above. Judge Moyé said, "We are off the record," just before the unrecorded discussion occurred, so perhaps the attorneys were on notice that the court reporter was not transcribing their objections to the final charge. Then again, perhaps they weren't. Perhaps something happened during the unrecorded conference to make the Monzingos' attorney reasonably but erroneously believe that the court reporter had begun recording the charge conference before he made his objections to the charge. And during this appeal, Flories has never argued that the Monzingos failed to preserve their second issue.

Given the course of proceedings in this case, we are reluctant to resolve the Monzingos' second issue on failure-to-preserve grounds. Because we determine that we can resolve it on other grounds, we assume without deciding that the Monzingos timely and plainly requested the spoliation jury instruction found in the proposed jury charge they filed a few months before trial, and that Judge Moyé denied their request.

## 2. Applicable Law and Standard of Review

The Texas Supreme Court adopted detailed rules to govern spoliation complaints in *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9 (Tex. 2014). Those rules include the following:

- The trial judge, not the jury, must decide whether spoliation occurred and, if so, what remedy is appropriate. If an evidentiary hearing is necessary for the judge to ascertain the relevant facts, the hearing must not take place in the jury's presence. *Id*. at 20.

- The party claiming that the other side spoliated evidence bears the burden to prove two elements: (1) the other side owed a duty to preserve the evidence and (2) the other side breached its duty to preserve material and relevant evidence. *Id*.

- If the trial judge determines that a party spoliated evidence, it may impose an appropriate remedy. The remedy must be directly related to the act of spoliation, and it must not be excessive. *Id*. at 21.

- The submission of a spoliation jury instruction is among the harshest sanctions available to remedy an act of spoliation. *Id*. at 23. Accordingly, the trial judge has discretion to submit such an instruction only if (1) the spoliating party intentionally spoliated evidence or (2) the spoliating party negligently spoliated evidence and the spoliation irreparably prevents the nonspoliating party from having any meaningful opportunity to present a claim or defense. *Id*. at 23–26.

The court emphasized that a spoliation instruction should be used cautiously because it tends to "tilt a trial in favor of a nonspoliating party" and thus "can, in some sense, be tantamount to a death-penalty sanction." *Id*. at 23.

We review a trial judge's ruling on a request for a spoliation jury instruction for abuse of discretion. *See Schindler Elevator Corp. v. Ceasar*, 670 S.W.3d 577,

590–91 (Tex. 2023) (denial of spoliation instruction); *Brookshire Bros.*, 438 S.W.3d at 27 (granting of spoliation instruction).

### 3. Relevant Facts

As discussed above, *Brookshire Brothers* contemplates that a party raising a spoliation complaint will obtain a hearing outside the jury's presence at which it will prove up the necessary elements of spoliation. 438 S.W.3d at 20. The Monzingos did not do that in this case. Rather, they rely principally on the evidence admitted at trial to substantiate their spoliation claim. We summarize the evidence as follows.

On the first day of trial, before the jury venire was brought in, Judge Moyé admitted the Monzingos' exhibit 20, which is a one-page document that appears to be a form "employee witness statement" created by "MasTec Advanced Technologies." Flories's name is typed in the boxes for first and last name, and an "Employee #" is also typed in. In a box under the heading "This Statement is in My Own Words" is the following typed first-person narrative:

> I was going to my 3rd job for the day. I was on county rd 135, at a stop sign. I had the sun in my eyes, I was stopped, I looked left, it was clear, I looked right and I did see a car very far away. Because of the distance I believed I had time to cross as I check left I begin to cross. As I get to the other side I heard a horn, looked right. I tried to turn left as hard as I could in hopes she would either have a chance to veer or at least minimize damage to her vehicle. The road I was on was at an angle and had a small billboard and a lot of trees in the way. I also feel like its worth mentioning I was leaving off a hill and have been having transmission issues.

Although the document has a space near the bottom for the witness's signature, it is unsigned. The only date on the document is this text at the bottom of the page:

"Revised 05/18/2016 Rev 1.1." And the document is Bates numbered "FLORIES 000002."

Then, during Flories's testimony, the Monzingos offered their exhibit 75 into evidence, and Judge Moyé admitted it. That exhibit was a single admission made by Flories during discovery as follows:

> **REQUEST FOR ADMISSION No. 3:** Defendant made an oral statement to a company, conducted over the telephone and recorded by the agent for the company
>
> **RESPONSE: ADMIT**

But during subsequent questioning by the Monzingos, Flories testified that he did not remember giving a recorded statement. After Flories gave a nonresponsive answer to a question, Judge Moyé intervened and said, "The question that was posed to you was: Did you produce your recorded statement? 'Yes' or 'no.'" Flories answered, "No." Then the Monzingos read into the record Flories's deposition testimony in which he was asked, "Did you give a recorded statement to MasTec about this accident?" and he answered, "I believe so." Flories testified that he remained employed for a brief period after the accident "pending an investigation," and then he was fired because of the accident.

Flories further testified that he was not aware of giving a statement to anyone else other than the MasTec statement that was the Monzingos' exhibit 20. He

testified that he did not "have any copy of a recorded statement" and that he did not believe he was "ever provided a copy of any recorded statement."[4]

### 4.     Application of the Law to the Facts

With regard to factual matters and matters committed to his discretion, a trial judge abuses his discretion if he can reasonably reach only one decision and he fails to do so. *VSDH Vaquero Venture, Ltd. v. Gross*, No. 05-19-00217-CV, 2020 WL 3248481, at *4 (Tex. App.—Dallas June 16, 2020, no pet.) (mem. op.). On this record, Judge Moyé reasonably could have concluded that the Monzingos failed to carry their burden to show that Flories actually withheld or destroyed any evidence and thus properly rejected any request for a spoliation instruction.

The record establishes that before trial the Monzingos obtained a document that appeared to be Flories's own statement about the accident, typed by an unknown person on a MasTec Advanced Technologies form. The Monzingos successfully offered this document into evidence at trial as their exhibit 20. The Monzingos' spoliation theory is that Flories also gave or made another recorded statement that he never produced. But the evidence offered to show that such a statement existed and went unproduced was not so overwhelming that Judge Moyé was compelled to find those facts in the Monzingos' favor.

---

[4] The Monzingos also refer to a motion to compel they filed in June 2021 and a hearing on that motion before Judge Parker, but we see nothing to indicate that any of these matters were brought to Judge Moyé's attention. Accordingly, we do not consider them in our analysis. *See Swarovski v. Enger*, No. 05-17-00398-CV, 2018 WL 1357483, at *2 n.2 (Tex. App.—Dallas Mar. 16, 2018, no pet.) (mem. op.) (pleadings and evidence from prior hearings cannot be considered by the trial judge unless admitted into evidence at the hearing in question).

The Monzingos point to Flories's admission that he "made an oral statement to a company, conducted over the telephone and recorded by the agent for the company." The Monzingos argue that their exhibit 20 does not fit this description because it is not a "recorded statement," so Flories must have possessed some other recorded statement and not produced it. We disagree. A written statement is a recorded statement. *See Record*, THE NEW OXFORD AMERICAN DICTIONARY (2001) (verb: "set down in writing or some other permanent form for later reference, esp. officially"; also noting adjective form *Recorded*). At the very least, Judge Moyé could reasonably conclude that Flories's admission referred to exhibit 20 and did not prove that an additional, unproduced statement existed. The Monzingos also suggest that the legend at the bottom of exhibit 20—"Revised 05/18/2016 Rev 1.1"—implies that there was another statement in addition to this one. But the revision date of May 18, 2016, was two days before the accident occurred, so Judge Moyé could reasonably conclude that the legend referred to a revision of the form rather than a revision of some other statement by Flories.

Next, the Monzingos point to Flories's testimony in answer to Judge Moyé's question that he did not produce his recorded statement. But Judge Moyé could have concluded that this testimony was refuted by exhibit 20, which was in the Monzingos' possession and bore a "FLORIES" Bates number at the bottom. Thus, Flories's answer to Judge Moyé's question could have been a mere mistake or misunderstanding, and it cannot be treated as a judicial admission. *See Mendoza v.*

–21–

*Fid. & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980). Later, Flories testified that he was not aware of giving anyone a statement other than Monzingos' exhibit 20, that he did not "have any copy of a recorded statement," and that he did not believe he was "ever provided a copy of any recorded statement." This was additional evidence before Judge Moyé that Flories did not withhold any statements from the Monzingos.

Based on the totality of the circumstances, Judge Moyé reasonably could have concluded that the Monzingos failed to carry their burden to show that Flories spoliated evidence. Accordingly, he did not abuse his discretion by not giving a spoliation jury instruction.

### 5. Conclusion

We overrule the Monzingos' second issue on appeal.

## C. Issue Three: Did the trial judge commit harmful error by failing to act as a neutral judge during the trial, or was there harmful cumulative error?

In their last issue, the Monzingos argue that Judge Moyé failed to act as a neutral and impartial judge during the trial to their prejudice. Alternatively, they argue that there was harmful cumulative error. We overrule this issue for the following reasons.

### 1. Applicable Law

Judicial rulings alone almost never constitute a valid basis for a bias or partiality complaint. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (per curiam). Likewise, judicial remarks during a trial that are critical of,

disapproving of, or hostile to counsel, the parties, or their cases ordinarily do not support a bias or partiality challenge. *Id*. Expressions of impatience, dissatisfaction, annoyance, and even anger will not alone establish bias or partiality. *Id*. Even a stern and short-tempered judge's ordinary efforts at courtroom administration are immune from challenge. *Id*. A trial judge has broad discretion to maintain control and promote expedition in proceedings. *Id*. at 241.

Moreover, complaints that a judge made improper statements during a trial must be preserved in the trial court. *Id*. The aggrieved party must object to allegedly improper conduct or comments when they occur in order to preserve error, unless the conduct or comment could not be rendered harmless by a proper instruction. *Id*.; *Wilhoite v. Sims*, 401 S.W.3d 752, 764 (Tex. App.—Dallas 2013, no pet.).

### 2. Application of the Law to the Facts

The Monzingos argue that the trial judge prejudiced them by making improper and hostile statements during trial, particularly during the testimony of one of their expert witnesses, Dr. Kimberly Arlinghaus. The reporter's record shows that they did not make any contemporaneous objections to any of the alleged misconduct, but they did raise their complaints relating to Arlinghaus's testimony in their motion for new trial. Because they did not timely object to the alleged misconduct, the Monzingos must show not only that the trial judge committed misconduct but also that the harm from the misconduct was so great that it could not have been cured

with an instruction to disregard. *See Dow Chem. Co.*, 46 S.W.3d at 241; *Wilhoite*, 401 S.W.3d at 764.

We first address the Monzingos' complaint about the trial judge's conduct during the testimony of Arlinghaus, a neuropsychiatrist. During her cross-examination, the trial judge perceived one of her answers to be nonresponsive, and he sua sponte instructed her to "answer the question as posed to you." About eight pages of reporter's record later, the judge repeated that instruction, and then he repeated it again four questions later. Thirteen pages of reporter's record later, the judge again repeated the instruction. Four questions later began the colloquy at the heart of the Monzingos' complaint:

> Q.  Okay. And are you saying that these ER doctors and these emergency medical technicians, that they just got it wrong, or that they ignored signs that they should have indicated on these records?
>
> A.  Our ER doctors are there to save lives—
>
> THE COURT:  Ma'am, that's not the question that he posed to you. Please, please, just answer the question that's posed to you.
>
> A.  Could you repeat the question, please?
>
> [FLORIES'S COUNSEL]:  Could I have it read back, please?
>
> THE COURT:  Yes, sir, you may.
>
> "Are you saying these ER doctors, these emergency medical technicians, they just got it wrong, or that they ignored signs they should have indicated on these records?
>
> "Yes" or "no."
>
> A.  I am testifying to the truth—

–24–

THE COURT: Ma'am, — I'm sorry, I'm sorry. Just a minute. Now, that's not what I asked you, and I've asked you a couple of times not to do that.

**I'm now ordering you solely to answer the question that is posed to you; not to volunteer any other information, not to explain what problems exist in medical treatment or anything like that that you're not asked. That is now the order of this Court.**

**If you do not comply with my order I will command the jury to disregard your testimony. Do you understand what I'm telling you?**

THE WITNESS: Yes, Your Honor.

THE COURT: Okay. The question is: Are you saying that these ER doctors, these emergency medical technicians, they just got it wrong, or that they ignored signs they should have indicated on these records?

A. I believe they missed the diagnosis.

THE COURT: Thank you.

(Emphasis added.) Arlinghaus's testimony continued for about 25 more pages of reporter's record without any more problems with nonresponsive answers.

We conclude that the trial judge's conduct during the above-quoted exchange did not rise to the level of impermissible bias or partiality, much less incurable error. The record shows that before this exchange the judge repeatedly instructed the witness not to give nonresponsive answers. On this final occasion, he again gave her that instruction, and she immediately disregarded it, leading to the judge's warning that now draws the Monzingos' complaint. Given the witness's repeated noncompliance with the judge's instructions, we conclude that the judge's conduct was within his discretion to maintain control and promote expedition in the trial. And although the Monzingos further try to show bias by pointing out that the judge

–25–

said, "Thank you. Stay safe," to one of Flories's experts at the end of his testimony, he similarly said, "Have a pleasant day. Stay safe," to Arlinghaus at the end of her testimony.

The Monzingos argue that several other incidents during trial also demonstrated impermissible bias or partiality, but we reject all of these contentions as well. They refer to us two exchanges in which the trial judge corrected another expert witness for the Monzingos, Dr. Thomas Shoaf, for giving nonresponsive answers. But the record shows that Shoaf was indeed giving nonresponsive answers, and the judge's instructions on those occasions were not intemperate or hostile.

The Monzingos also complain about three trial rulings made by the trial judge: (1) he overruled an objection the Monzingos made based on a limine ruling; (2) he overruled another objection they made seeking clarification of a question; and (3) he sustained one of Flories's objections to admission of a photo of the Monzingos' vehicle. But judicial rulings alone almost never constitute a valid basis for a bias or partiality complaint, *Dow Chem. Co.*, 46 S.W.3d at 240, and we conclude that these three complaints fall within this general rule.

The Monzingos also complain that the trial judge "lashed out" at Patricia Monzingo "more than once" during the trial. They cite only one such instance, however, and on that occasion it appears that Patricia Monzingo was visibly reacting to the testimony of one of Flories's expert witnesses. The judge instructed her as follows: "I don't want to see any demonstration of what you agree or disagree with

from the witness stand. Please remain stoic. If you cannot, you can retire to one of the conference rooms. Understood?" Patricia Monzingo replied, "Yes, sir," and the trial continued without any more similar incidents. On the cold record, we cannot say that the trial judge's admonition was improper, much less an incurable error.

Finally, having concluded that the Monzingos have not shown any error under the applicable standards, we further reject their claim of cumulative error. *See In re BCH Dev., LLC*, 525 S.W.3d 920, 930 (Tex. App.—Dallas 2017, orig. proceeding) ("When there are no errors, we reject cumulative error arguments.").

### 3. Conclusion

We overrule the Monzingos' third issue on appeal.

## IV. DISPOSITION

We affirm the trial court's judgment.

/Dennise Garcia/
_____
DENNISE GARCIA
JUSTICE

220719F.P05

–27–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PATRICIA MONZINGO,
INDIVIDUALLY AND AS NEXT
FRIEND OF W.J.M., A MINOR,
AND MADISON MONZINGO,
Appellants

No. 05-22-00719-CV     V.

JOHN WOODROW FLORIES,
Appellee

On Appeal from the 116th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-06028.
Opinion delivered by Justice Garcia.
Justices Goldstein and Miskel
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee John Woodrow Flories recover his costs of this appeal from appellants Patricia Monzingo, Individually and as Next Friend of W.J.M., a Minor, and Madison Monzingo.

Judgment entered this 12th day of October 2023.